Camp *vs.* Phillips.

A. L. CAMP, plaintiff in error, *vs.* NANCY PHILLIPS, administratrix, defendant in error.

Where, in a proceeding under the Relief Law of 1868, setting up an equitable defense against a judgment obtained in 1860, it was alleged in the motion that the defendant's intestate (then in life) had, during the war, in 1863, sold a valuable real estate, on the assurance of the plaintiff that he would receive in payment of his judgment the proceeds, and it appeared in evidence that the plaintiff had agreed to receive "bank bills;" that the defendant's intestate had sold his said

estate, taking as part of the consideration "bank bills," then worth one for five of currency, and had by his agent, the sheriff of the county, tendered to plaintiff bank bills to the full amount of the judgment, which he refused, and the bills were left with the sheriff, who exchanged them for Confederate money, and then Confederate bonds, and the whole was lost; and the jury found the execution satisfied, and the Judge refused a new trial:

*Held,* That, whilst this Court is not exactly satisfied with the verdict, it not appearing positively that the agreement to take the bills was before the sale by the defendant of his property, yet, as there was evidence from which this might fairly be inferred, this Court will not control the discretion of the Court below in refusing a new trial.

It is not error in the Court below to refuse to make a charge requested in writing, if the same be not pertinent to the evidence.

When a distinct issue is presented in the pleadings, it is not error in the Judge to charge the law in relation thereto, though the evidence be very slight upon that particular point.

Lochrane, C. J., concurred:

Warner, J., dissented upon the ground that the charge was upon *assumed* facts. (R.)

Relief Act of 1868.   New Trial.   Before Judge Green. Newton Superior Court.   September Term, 1870.

On the 27th of September, 1860, Green B. Turner obtained a judgment in said county against Noah Phillips for $2,000 00 principal, and $766 02 interest to that date. *Fi. fa.* was issued in October, 1860. In May, 1861, Turner transferred this *fi. fa.* and judgment to Camp. Phillips died in 1864, and his wife administered upon his estate. On the 5th of March, 1867, she paid $650 00 on said *fi. fa.* to Camp. On the 7th of October, 1868, the *fi. fa.* was levied upon certain property of said Phillips, deceased. Mrs. Phillips claimed the benefit of the Relief Act.of 1868. On the trial, Camp's counsel asked the Court to rule that said Act was unconstitutional, because it impaired the obligation of contracts, etc. But he held it to be constitutional.

What property Phillips had at the date of the contract, and what he lost during the war and by its results, (as the

emancipation of his slaves,) was shown. It is not material here. There was no evidence that Turner or Camp had any agency in these losses. Besides that, there was other evidence of an effort to pay, as follows:

Phillips' son testified, that, some time in the last year, Camp told him that he met deceased near the bridge at the factory, when deceased asked him if he would take bank money, and he, Camp, said he would, and that when deceased tendered him the bank bills he refused them, because they were not all bank bills. Deceased sold the Cedar Shoals to Steedman at $18,000 00, took ten shares in Covington Mills in part payment, valued at $1,000 00. Steedman owes the estate about $3,000 00, he thought, for personal property bought at the sale.

Steedman swore that he bought of deceased half interest in the Cedar Shoals at $18,000 00 in 1863, and paid him $5,000 00 in bank bills. He let deceased have property worth $1,500 00 then, and yet witness bought some things at the sale, for which he had never paid. Witness offered $3,000 00 for the machinery and stock, or deceased's part of the same; there has been no settlement of the debt since the war. Bank bills at the time of said trade were worth two or three times as much as the Confederate currency; he was to pay deceased $5,000 00 in bank bills, and deceased was to pay off the judgments against deceased.

The Clerk of the Superior Court testified, that in 1863 Phillips deposited with him about $3,100 00 in bank bills, to pay off said *fi. fa.;* some on Northwestern Bank, some on the Georgia Railroad Bank, and some on the Bank of Fulton, mostly Northwestern Bank, and but little on the Georgia Railroad and Banking Company. Witness thinks Phillips sold half of his factory to pay his debts, and that the bills of Northwestern Bank were then about as good as any bank bills. Witness turned these bills over to the sheriff.

The sheriff testified, that as agent for Phillips, he went to Camp, who had the *fi. fa.,* and asked him if he would take

half in bank bills, and half in Confederate money. Camp refused; said he had promised to take bank bills. He then offered to pay all in bank bills. Camp refused, saying that he wanted Georgia Railroad bills. The money was not with witness at the time, but in his office, but Camp knew he had it. This money was afterwards invested in Confederate States cotton bonds, and they remained in the office till they became worthless.

Another witness said that Northwestern bills were then about as good as any, and that when the bills were tendered to Camp, he said he was going to leave the country, and preferred to hold the judgment.

It appeared by other evidence that said investment in bonds was made, and the bonds were put in evidence. And it was shown that this was a security debt, contracted in 1856.

Plaintiff's counsel requested the Court to charge the jury, as follows: "1st. That they must render their verdict upon principles of equity, as regulated by law. 2d. That by law the judgments of a Court of competent jurisdiction of the person and subject matter, are conclusive of the rights of the parties and their privies, unless properly attacked for fraud. 3d. That to reduce the judgment upon the ground of loss of defendant, with which plaintiff had no connection, would impair the obligation of that contract, which they could not by law do. 4th. That to entitle the defendant to a reduction of the amount of the judgment, on the ground of equities, these equities must exist between the parties, and at the time of the contract. 5th. That the Court must explain to the jury what the statute and the law means by the equities between the parties. 6th. That the jury have no power to make contracts for the parties, nor have they the right to alter or change the contract made by the parties, nor have the jury the right to mould the contract to suit their pleasure. That, if the jury attempt to make a contract for the parties, or to change or vary the contract to suit their views of equity,

such verdict would impair the obligation of the contract, and be void, as in conflict with the Constitution of the United States. 7th. That, although the law permits evidence to go to the jury to show the amount and value of the property, at the time the debt was contracted, or the contract entered into, and to show upon the faith of what property the credit was given, and of what tender or tenders of payment he made to the creditor at any time, and that the non-payment of the debt was owing to the refusal of the creditor to receive the money tendered, or offered to be tendered, and of the destruction or the loss of the property, upon which the faith of the credit was given, and how and in what manner the property was destroyed or lost, and by whose fault, yet this evidence does not justify the jury in finding a verdict that impairs the obligation of a contract. The words 'according to the equities of the case,' does not confer upon the jury an unlimited, arbitrary discretion. But they must render their verdict on principles of equity as regulated by law, and that by law, judgments of a Court of competent jurisdiction of the person and subject matter are conclusive of the rights of the parties, unless attacked properly for fraud. All of which said written requests were refused by the Court. The Court charged the jury as follows:

First. He read to the jury the first and second sections of an Act of the Legislature of Georgia, entitled an Act for the Relief of Debtors, and to authorize the adjustment of debts upon the principles of equity, passed in 1868, and instructed the jury that the said Act was constitutional, and that the Supreme Court had so decided it. Second. As requested in writing by counsel for defendant, the Court charged the jury 'that if Camp agreed with Phillips to receive bank bills in payment of the debt, and Phillips went forward and sold property at a less price than he could have got for it in the common currency of the country, and Phillips tendered him the bank bills in a reasonable time, then it amounts to a

payment, and that they, the jury, should find for Mrs. Phillips. The jury returned a verdict as follows: " We, the jury, find in favor of the movant, Mrs. Nancy Phillips, administratrix, and that the *fi. fa.* and judgment has been paid." Whereupon counsel for plaintiff moved for a new trial in the said cause, on the following grounds, to-wit: Because the Court held said Act of 1868 to be constitutional; because he charged, as requested by defendant, when there was no evidence to support said charge; because the Court refused to charge as requested by plaintiff's counsel; because the verdict was contrary to evidence, etc.; and because of the admission of certain evidence not material for our purposes. He refused a new trial on all the grounds taken, and also because said judgment was, on its face, dormant.

This refusal of a new trial was then and there protested against, counsel for plaintiff stating, in his place, that the plaintiff, before the lapse of the seven years from the date of the said judgment, had sued out a summons of garnishment for Enoch Steedman on this said judgment, and had judgment on said garnishment for a large amount of this debt, and that the said order in that form might, under the said verdict and judgment in the said case, injuriously affect the rights of the plaintiff, for that defendant had already moved to vacate the said judgment on the garnishment against E. Steedman. With the record of the cause, the Clerk sent up a copy of said garnishment papers, showing the truth of said statement.

The refusal of a new trial is assigned as error.

John J. Floyd, for plaintiff in error.

A. M. Speer; A. B. Sims, for defendant.

Camp *vs.* Phillips.

McCay, J.

This is a case under the Relief Act of 1868. Before that Act, the defendant in the judgment would have been compelled to set up her rights in equity. Under that Act, she asserts them in a Court of law. Her claim is, that, by the conduct of the plaintiff in the judgment, *since* the date of the contract, and *since* the judgment an equity has arisen between them, which, under the Act of 1868, she is entitled to have adjusted.

It is admitted that if, in fact, Phillips sold his property for bank bills, or procured bank bills in any way, on the promise of Camp to take them in discharge of the judgment, and Camp, *after* Phillips had so procured them, capriciously refused to receive them, and they were lost in Phillips' hands, then such an equity does exist. The whole case turns on the facts. They have been submitted to a jury, the jury has passed upon them, the Judge has refused a new trial, and an appeal is made to this Court to set aside the verdict and reverse the judgment of the Court.

To justify this, the verdict must not only be strongly and decidedly against the weight of the testimony, but the Judge must have abused his discretion in refusing to disturb it. It comes to us under the sanction of the decision of twelve sworn men, neighbors of the parties, clinched by the judgment of the Court who heard the evidence. For myself, I believe the verdict of the jury to be right, on the facts.

It is perfectly established that Phillips sold his property for the purpose of paying his debts; that Camp promised him he would take bank bills; that Phillips required of the purchaser bank bills; that such a requirement was unusual and bank bills at a considerable premium, indeed, as the history of the times is, they were thought to be as good as gold; that this particular execution was in the mind of Phillips and of the purchaser; that Camp refused to take the bills, though tendered by the sheriff, shortly after the sale,

and that the bills were lost by the results of the war. There is not a break in this testimony but one. It is not, I admit, *perfectly* clear that Phillips acted on the promise of Camp, or that this promise of Camp was *before* the sale of his property by Phillips. The dates of the several events are not given in the bill of exceptions, but it seems to me that the evidence of Camp's promise being anterior to the sale is sufficiently strong to sustain the verdict.

The money does not seem to have gone into Phillip's hands at all. Evidently the purchaser required it to be passed directly to the officers; as the execution was in Camp's hands, they make the offer to pay. Evidently the money was procured by Phillips, deposited with the Clerk and tendered in view of the promise. The inference from the actual facts is strong. Why should Phillips exact bank bills? Why should the money be deposited with the Clerk? Why should Camp *admit* to the sheriff that he had made the promise, if it was not understood that the promise to take the bills was Phillips' motive for the sale and for exacting the payment in bank bills. We think the jury had a right so to conclude. Indeed, we do not doubt but that this was the truth of the case. If this be so, the equity of the case was with the complainant, and the verdict ought to stand. The inference from the whole conduct of Steedman, Phillips, the sheriff, and of Camp himself, that this promise was before the sale, is, to my mind, very strong, and I cannot consent to set aside this verdict, and hold the jury to have acted contrary to the evidence, because I cannot say that the inference is irresistable.

LOCHRANE, C. J., concurring.

The facts in this case have already been stated, and it is not necessary to recite them further than it may be necessary to elucidate our opinion of concurrence in the judgment pronounced by the Court. In *Graham vs. Clarke*, this Court

held that, to sustain a plea, under the Relief Act of 1868, it must appear that the loss which the defendant claims as an equitable ground for reducing the plaintiff's claim was, in some way, the fault of the plaintiff. Mere loss of property, by the late war, or in consequence of its result, is not sufficient ground for the reduction of a debt contracted before the war. Such is the judgment of the Court in the case referred to; and the naked issue in this case is whether there was sufficient testimony to sustain the finding of the jury, under the principles of law which we have laid down. For, if the record discloses such testimony, even although it is slight, this Court will not reverse the judgment of the Court below refusing to grant a new trial. Upon this point we may remark, in advance, that there is no difficulty in sustaining the verdict of the jury, upon the ground that Camp agreed to receive bank bills in payment of this execution. The question is, at what time; whether before the sale of the property of Phillips, or subsequently thereto. Steedman testifies that, at the time he purchased the property from Phillips, the agreement between Phillips and himself was that he, Phillips, was to pay off the executions existing against him, and that he paid Phillips bank bills as part consideration for the purchase of the property. The amount of the execution was deposited, in bank bills, with the Clerk of the Superior Court, from which the execution issued, and were, by him, turned over to the sheriff, who offered them to the plaintiff in error, who admitted he had agreed to take bank bills, but required Georgia Railroad bills, and refused such as were then offered. In a conversation between young Phillips and Camp, Camp admitted that he had agreed to take bank money from his father in payment of his execution.

In the view which we take of the evidence in this case, we are satisfied, from all the surrounding circumstances, that there was evidence upon which the jury might find that the sale, by Phillips, of his property for bank bills, with which to pay his debts, coupled with the admission of Mr. Camp,

that he had agreed to receive such currency in payment for his judgment, and, when tendered to him by the sheriff, his objection only being to the character of the bank bills, and not to the fact that he had so agreed to receive bank bills, was such an admission, coupled with such sale, and tender, and deposit, to the amount of the execution in the Clerk's office of the Superior Court, as sustained the jury in their finding. It will be recollected, in this case, that Mr. Phillips, the party with whom this agreement was originally made, in 1863, and who made this sacrifice of his property for a currency which had ceased to be common or usual in transactions of trade or business, sleeps in his grave since 1864, and that the evidence of this contract comes from the lips of Camp, by admissions made, and nowhere controverted or contradicted in this record, and must be taken in connection with the acts of Phillips, as appears from the evidence of the Clerk and sheriff, with every legitimate inference that may shed light upon the purpose of the one, as connected with the promise and agreements of the other. I therefore concur in the opinion pronounced by the Court, upon the principle that the agreement to take the bank bills in extinguishment of this execution before the sale of the property was sufficiently proved to sustain the finding of the jury.

For myself, however, I do not hold it necessary, to bring the defense within the principle of the Relief Act, that the party should have sold his property upon an agreement first entered into before the sale; that the plaintiff should receive the bank bills; nor do I hold such to be the principle held by this Court in 40*th Georgia*. The Judge, in delivering that opinion, evidently puts each case upon its own peculiar equities; and in the case of *Cutts & Johnson vs. Hardee*, in 38*th Georgia*, defining the equities, as well as the general proposition therein laid down by the Court, and in a fair construction of the statute, any act of the plaintiff, growing out of the contract, or arising, subsequently, by which the plaintiff had occasioned a loss by some failure of his to do

Camp *vs.* Phillips.

what he had agreed, or which would connect him with such loss by virtue of any act upon his part, ought to go to the jury, to be by them considered and adjudicated. And, while we recognize the mere whim of the jury in the assertion of equity, without proof, will not be supported by the Courts, still, their discretion is broad—intentionally broad—as conferred by the statute, where even proof is slight to connect the plaintiff with the loss of the defendant's property, which may be proved by circumstances as well as by positive testimony. This discretion ought not be interfered with or set aside, except in very flagrant cases of abuse. And where, in 1863, a party agreed to take any specific currency in extinguishment of a debt, in or out of judgment, and the defendent, by sale of property, or by loan, or in any other manner procured said funds and tendered them, in compliance with such agreement, and the plaintiff refused to perform what he had agreed, such failure constitutes an equity, under the statute, the adjustment of which, by verdict, the Courts would not be authorized to disregard and set aside.

WARNER, J., dissenting.

This was an application to open a judgment under the provisions of the second section of the Relief Act of 1868, and, upon the trial of an issue between the parties, the Court charged the jury, " that if Camp agreed with Phillips to receive bank bills in payment of the debt, and Phillips went forward and sold property at a less price than he could have got for it in the common currency of the country, and Phillips tendered him the bank bills in a reasonable time, then it amounts to a payment, and that the jury should find for Mrs. Phillips." The charge of the Court assumes that there was evidence that Camp agreed with Phillips to receive bank bills in payment of his debt *before* Phillips sold his property; whereas, there is no evidence in the record of any such agreement between the parties. The charge of the Court

also assumes that there was evidence that Phillips, in pursuance of *that agreement,* went forward and sold his property at a *less price* in bank bills than he could have got for it in the common currency of the country; whereas, there is no evidence in the record that Phillips went forward and sold his property at a *less price* in bank bills, in pursuance of that or any other agreement made with Camp.

This charge of the Court to the jury, in view of the facts disclosed by the record, was, in my judgment, erroneous, and being in relation to a vital point in the case for the consideration of the jury in adjusting the equities between the parties, I am of the opinion the judgment of the Court below should be reversed.