## 62226. JONES et al. v. MAGHDOUSSIAN.

BIRDSONG, Judge.

Money Had and Received. Alphonse Maghdoussian is a Lebanese tailor (but now a citizen of the United States), who has been in Atlanta for several years. He worked for Muse's clothing establishment until 1978. His wife, also Lebanese, did fine hand sewing while Alphonse was a machine tailor. In early 1978, a friend suggested that the appellant, Paul D. Jones, doing business as Little Ladies Laundry and incorporated in March 1978 as The Double L Company, needed a tailor in the laundry business. Maghdoussian, in early 1978, started to work parttime with Jones but soon the volume of work increased so that Maghdoussian left his employment with Muse's and began to work full time with Jones. The arrangement was that Maghdoussian leased space from Jones at Jones' laundry. Maghdoussian and his wife accepted tailoring work from Jones' customers. Sometimes the customer paid Maghdoussian cash directly for the tailoring; other times if the customer wanted both tailoring and dry cleaning, Maghdoussian would perform the work and surrender the ticket to Jones who would collect the entire charge from the customer and pay weekly to Maghdoussian the value of the tailoring work. Mrs. Maghdoussian subsequently became pregnant in 1978 and gave birth in February, 1979. After his wife left work, Maghdoussian no longer had sufficient time to tend to the customers and do his tailoring work. To solve this problem, Jones orally agreed with Maghdoussian that Jones or his employees would take in the tailoring orders and collect the charges. Jones would collect $.50 for each ticket as an administrative cost. Jones would then pay to Maghdoussian the amounts collected for tailoring services. This weekly payment by Jones to Maghdoussian continued successfully until June, 1979. From June, 1979 until Maghdoussian quit (at Jones' invitation) at the end of August, 1979, Jones' payments became more sporadic and ultimately by August were over a month behind. Maghdoussian customarily surrendered all his tailoring tickets to Jones for payment but at the end of each day, Maghdoussian entered the total of each day's work on a wall calendar. Thus Maghdoussian was able to calculate by day and by week the exact amount of tailoring charges for the last three weeks of July and last three weeks of August, 1979. (He was on vacation during the first part of August.) While there were two payments made in July and August by Jones, these were for tailoring services rendered in June. The total of the weekly bundles of tickets submitted to Jones and the same totals indicated on the calendar established that Jones was delinquent in payments of $2,550.50 for July and August, 1979. Maghdoussian had given Jones a

deposit of $300 to cover any shortages in cash payments made by Jones from laundry ticket receipts. There being no evidence of any actual shortages, Maghdoussian demanded the return of the $300 as well. In addition to a claim for stubborn litigiousness, Maghdoussian sought the return of the $300, the $2,550.50 for past due services and interest thereon. Following a jury trial, the jury returned a verdict for the $300, the $2,550.50, $218.50 interest and $900 attorney fees. This was made the judgment of the court. Jones unsuccessfully sought a new trial alleging that the trial court erred in giving several charges and upon the general grounds. He brings this appeal enumerating five alleged errors. *Held:*

1. Jones urges as his first enumeration of error the denial of the motion for new trial and specifies as grounds therefor the giving of three charges by the trial court. The first two of these charges deal with the implied promise to pay for valuable services rendered or property transferred. Jones argues that the tailoring was done for customers and not for him; therefore, the charges were not responsive to the evidence. We disagree. Though 'as between Jones and Maghdoussian there was an understanding that each performed separate services, they also agreed to promote each other's business interest. Tickets admitted as evidence and considered by the jury indicated that a customer very often came to the laundry dry cleaner for both cleaning and tailoring and were billed for cleaning and tailoring services on one ticket. Thus, Maghdoussian certainly supported and promoted Jones' business. Jones collected much more than the $2,550.50 from these tickets, part of which was his collection for dry cleaning services and part of which was for tailoring services. Yet the jury found that Jones declined to pay or even acknowledge that he owed Maghdoussian the $2,550.50 for the tailoring services. Additionally, Jones earned $.50 on each ticket on which tailoring charges appeared even though on many of the same tickets, Jones may also have collected money due the laundry for services rendered. Under these circumstances, we find no error in charges informing the jury of the legal aspects of money had and received (i. e., unjust enrichment). See *Trust Co. of Ga. v. S & W Cafeteria,* 97 Ga. App. 268, 283 (103 SE2d 63).

In the third charge of which complaint is made, Jones urges that the trial court erred in charging on the theory of bad faith in refusing to acknowledge the indebtedness, and in authorizing the jury to return attorney fees based thereon. Jones contended that this denial was in fact a factual dispute as to the continued existence of any indebtedness. Jones' testimony in effect asserted that Maghdoussian could not prove the indebtedness and that he (Jones) believed he had paid all he owed. What appellant ignores is that the trial court fully

charged the jury that if it found a genuine dispute over the indebtedness, costs of litigation were not recoverable, even though Jones admitted the $300 debt. The charge instructed the jury that in order to support a bad faith award, it had to find that Jones believed the money was due Maghdoussian and that Jones refused to pay the debt in bad faith. Though Jones did not actually admit the indebtedness, we cannot say that the jury's verdict is not supported by some evidence or that the issue was not raised by the evidence. It is well settled that an instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. *Camp v. Phillips,* 42 Ga. 289. To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be made in respect to it. *East Side Auto Parts v. Wilson,* 146 Ga. App. 753 (2) (247 SE2d 571); *Pope v. Associated Cab Co.,* 90 Ga. App. 560, 561 (83 SE2d 310). We find no error in the charges given by the trial court.

2. In his last enumeration of error, Jones complains that the trial court erred in entering judgment jointly and severally against him individually as well as against the Double L Company and Little Ladies Laundry. He argues that the agreements were between Maghdoussian and the corporation or the Little Ladies Laundry. Once again Jones ignores the evidence and thus the issue presented to the jury. Maghdoussian testified that he always dealt with Jones personally and believed all agreements were between the two men. Thus, an issue of fact was created as to whether Maghdoussian dealt only with entities other than Jones or with Jones himself. The trial court in its charge required the jury to return a verdict either against all the defendants (thus jointly and severally) or against each individual defendant, depending upon their resolution of the evidence. The jury's verdict conformed to the charge of the court and was a finding in favor of Maghdoussian's position. Moreover, there was no evidence presented that Jones was not the sole owner of the corporation or the sole owner and representative of Little Ladies Laundry. There was evidence in support of the finding that the corporation, the laundry, and Jones were in reality operating as one person. This sufficiently supports the finding of the jury as it "pierced the corporate veil." See *Bone Const. Co. v. Lewis,* 148 Ga. App. 61 (250 SE2d 851). We find no fault in the judgment.

3. In view of Jones' reliance upon the above discussed enumerations as the basis for his motion for new trial, it necessarily follows that if there is no merit in these enumerations on appeal, there was no error in the denial of the motion for new trial.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED OCTOBER 7, 1981.

*Claude E. Hambrick,* for appellants.
*Theodore Lee Marcus,* for appellee.