## 69887. BIG BEND AGRI-SERVICES, INC. v. BANK OF MEIGS.

(330 SE2d 422)

BIRDSONG, Presiding Judge.

Tortious advice by Bank. B&N Milling Co. ("B&N") was engaged in the business of buying grain as feed for its livestock and for resale as feed. It was a customer of the appellant Big Bend Agri-Services which sold bulk grain products. B&N conducted its banking business with the appellee Bank of Meigs. The Bank of Meigs held indicia of indebtedness against B&N of approximately $350,000.

In January 1981, Big Bend made a sale of bulk grain to B&N of 5,000 bushels of corn for a price of approximately $23,000. Big Bend had successfully dealt with B&N for several years, but on this sale, the Bank of Meigs returned B&N's check because of insufficient funds on deposit. The day after the return of the check and following inquiry by Big Bend, Big Bend's president was advised by the bank to come to the bank to redeem the check. A cashier's check was given Big Bend and the indebtedness fully satisfied. During the interim between the first presentment of the check and the cashier's check, additional funds had come to the bank from sales generated by B&N.

On February 16, 1981, B&N sought to purchase 10,000 bushels of corn for approximately $40,000. In accordance with normal procedure B&N left a check with Big Bend executed in all respects except for the amount. When the requisite 10,000 bushels had been weighed out (the bushel amount in fact being determined by weight) and the price per bushel having been ascertained from the day's quotation for corn on the futures market, the actual sales price was filled in on the check. Because of its January experience, the president of Big Bend called the Bank of Meigs and inquired of one of its officers as to the state of B&N's account. The bank officer truthfully advised the president of Big Bend that the bank still was doing business with B&N and that B&N still was experiencing cash flow problems. When reminded of the January returned check, the bank officer stated rhetorically that Big Bend had in fact got its money in January. Big Bend's president, based upon this conversation, authorized the release of the remainder of the corn (part already having been loaded onto B&N's trucks).

The next day (February 17), B&N's check was completed to reflect the actual amount of the sale, $40,702.84. As of the close of the work days of February 17 and 18, B&N's account reflected a balance of over $98,000; at the beginning of the work day, February 19, B&N's account showed more than $96,000. Instead of seeking payment directly from the Bank of Meigs, Big Bend deposited the check for payment on February 17. The check cleared the central bank (the Federal Reserve) on February 19 and was presented to the Bank of Meigs for payment through normal banking channels later on the day of

February 19. However, earlier during the day of February 19, a check from another of B&N's payees in the amount of $75,000 was presented and paid by the Bank of Meigs. Thus when Big Bend's check for $40,702 was presented for payment, there remained insufficient funds to meet that check, the beginning balance of that day of $96,000 having been depleted to less than $22,000 by the payment of the $75,000 check. It is not disputed that Big Bend did not make any effort to obtain a certification of funds or a cashier's check on February 17, 18 or 19, during which time there existed in the bank sufficient funds to meet the $40,700 check.

Based upon this state of facts, Big Bend brought suit against the Bank of Meigs asserting that the bank officer negligently assumed sufficient funds would be available and impliedly assured Big Bend's president that B&N's check would be honored and/or alternatively that the bank's officer fraudulently misled Big Bend as to the state of B&N's account so as to induce Big Bend to make the sale to B&N and thus protect the bank's position in B&N's indebtedness to the bank.

After a jury trial on the issues, the jury returned a verdict for the bank. Big Bend does not contest the sufficiency of the evidence or the findings of the jury based upon the evidence but enumerates sixteen alleged errors in the giving or failure to give requested charges or parts of requested charges. In substance, Big Bend argued that once having assumed the gratuitous (if not required) duty to advise Big Bend of B&N's financial situation, the bank was required to give full and accurate information. The advice actually given allegedly was inaccurate, false and tended to mislead to Big Bend's disadvantage and to redound to the bank's advantage. The bank argued to the contrary that if a duty arose it had to arise out of an implied agreement by the bank to furnish correct information inasmuch as the bank denied any confidential or agency relationship existed between itself and a third party, non-customer which simply presented to the bank a check made by one of its customers. Moreover, the bank contended that Big Bend was fully aware of B&N's cash flow problem and was guilty of its own negligence in not protecting its interests by failing to seek a certification of funds or cashier's check on February 17, 18 or early on February 19 while sufficient funds were present in the bank and that such negligence outweighed any negligence on the part of the bank, assuming such negligence by the bank to have existed. Our close examination of the charge of the court satisfies us that all the legal issues were fully, fairly and correctly presented to the jury. *Held*:

1. Appellant Big Bend's first three enumerations deal with the trial court's omission to charge on concepts of a duty arising out of a confidential relationship existing between the bank and Big Bend. We find no error in any of these omissions. Big Bend did not present evi-

dence of a special relationship existing between itself and the Bank of Meigs. It was no more than a creditor of one of the bank's customers. Thus the facts fail to establish any special circumstances establishing a confidential or agency relationship. Neither does the law create a confidential relationship between a bank and those with whom it deals. *Curtis v. First Nat. Bank of Commerce*, 158 Ga. App. 379, 380-381 (280 SE2d 404); *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 758 (250 SE2d 155).

In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is created no confidential relationship by this alone. *Dover v. Burns*, 186 Ga. 19, 26 (196 SE 785); *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440). Inasmuch as the requested charges were neither raised by the facts nor the law, the trial court did not err in refusing the requested charges based upon a confidential relationship. In fact, the trial court charged that though no duty initially existed upon the bank to give any account information to Big Bend, if the bank officer did undertake to furnish information, then the jury could determine whether the bank officer exercised ordinary care to see that the information was accurate and responsive to the information sought and was not misleading. From its verdict, it is apparent the jury concluded that the statement that B&N was experiencing cash flow problems, that the bank was still doing business with B&N, and that Big Bend had obtained payment of its January check was not only accurate but was not misleading. In actuality, the facts showed that the bank officer had every reason to believe that the assets in B&N's account on the day in question (February 17) were more than sufficient to meet a $40,700 check and indeed were sufficient for the next two days. From such facts, the jury was warranted in concluding the statements of the bank officer were based in truth and were neither fraudulently nor negligently made.

2. Appellant's fourth enumeration asserts the law provides that fraud, accompanied by damage *always* gives a right of action to the injured party (OCGA § 51-6-1); thus, its argument continues, the trial court erred by charging that such fraud *may* give a right of action. We find this enumeration to be without substantial merit. The charge as given by the court properly reflects that there may be instances of fraud wherein the alleged defrauded party has no right of action, e.g., where the defrauded party fails to exercise proper diligence to discover the fraud. See *Limoli v. First Ga. Bank*, supra. When the charge as a whole is considered in the context of the facts and law, the trial court fully informed the jury that it could find either fraud or negligence if supported by the facts. The charge given by the court was adapted to the facts and clearly illuminated the issues presented to the jury for resolution. See *Atlanta Transit System v. Hines*, 138

Ga. App. 746, 747 (227 SE2d 489).

3. In enumerations 5 and 7, Big Bend complains the trial court did not fully charge that fraud may be manifested by signs, tricks and artifices including silence. In its charge, the court fully defined fraud and informed the jury that fraud may not be presumed but being subtle, slight circumstances may be sufficient to carry conviction of its existence. Thus the charge in its entirety was sufficient to convey in words other than those requested the substance of the request. In such circumstances, there is no error in failing to give the charge in the exact language requested. *Atlanta &c. R. Co. v. Armstrong*, 138 Ga. App. 577 (227 SE2d 71); *Jones v. Tyre*, 137 Ga. App. 572, 575 (224 SE2d 512).

4. Big Bend's enumerations 6 and 16 complain of errors or omissions in the court's charge on punitive damages. When a verdict has been returned in favor of the defendant on liability, errors in the giving of a charge, failure to charge, or denial of requests to charge which go only to the matters of damages or the measure of damages are harmless and afford no ground for reversal. See *Maloy v. Dixon*, 127 Ga. App. 151, 152 (Hn. 2) (193 SE2d 19). These enumerations are without merit.

5. Big Bend complains the trial court erred in giving certain of the bank's requested charges, arguing the facts did not give rise to these issues. Thus Big Bend complains it was error to inform the jury that one allegedly defrauded must exercise ordinary care to discover the facts and to protect oneself from injury; that the holder of a questionable check might protect oneself by seeking a cashier's check or a certification of funds. Big Bend also complained the court erred in charging fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events. Big Bend also argued that a charge concerning an agreement between the parties which was incomplete is unenforceable and cannot form the basis for a count of fraud was confusing and erroneous because there was no direct evidence of an agreement between the bank and Big Bend.

Big Bend in substance does not argue that the content of the charges given constituted incorrect statements of law, only that the facts did not give rise to such issues. We disagree. It is well established an instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it. *Camp v. Phillips*, 42 Ga. 289. To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it. *Pope v. Associated Cab Co.*, 90 Ga. App. 560, 561 (83 SE2d 310). See also *East Side Auto Parts v. Wilson*, 146 Ga. App. 753 (2) (247 SE2d 571). Our examination of the facts presented to the jury discloses support in the evidence to warrant

each of the charges given. We find no merit in any of these enumerations.

6. In enumeration of error 14, Big Bend complains that because the trial court so frequently shifted back and forth in its charge on principles of fraud and negligence, the charge became confusing to the jury and could not furnish clear or adequate guidelines for the jury's use in determining the issues. Again, we disagree. We have examined the charge in its totality, carefully and with a view toward its understanding. While the charge may not be a model of clarity, when considered as a whole, we cannot conclude that the jury likely was misled. There is no reason to conclude this was not a jury of ordinary intelligence. The jury heard words of reasonable and ordinary meaning which substantially presented the principles of law so as to illuminate the issues. Even though the charge may not be as precise or as clear as could be desired, we will not disturb the verdict which we find amply to be supported by the evidence. See *Thomas v. Barnett*, 107 Ga. App. 717 (5) (131 SE2d 818); *Todd v. Fellows*, 107 Ga. App. 783 (131 SE2d 577).

7. In enumeration 15, Big Bend urges error because at the request of the jury for a re-charge on the issue of comparative negligence, the court failed to re-charge fully on all the issues of negligence so as to put the re-charge in proper perspective. While it would not have been error for the trial court to re-charge its lengthy instruction on the principles of negligence, the jury requested only a re-charge on the specific point of comparative negligence. Where the jury, after having been charged by the court, returns into court and requests an instruction upon a specific question, it is not error for the judge to confine his instruction to the specific point suggested by the jury's inquiry. *Scott v. Thomas*, 225 Ga. 139, 142 (166 SE2d 726). See also *Kimberly v. State*, 4 Ga. App. 852 (4) (62 SE 571). It is within the court's discretion to recharge the jury in full or only upon the point or points requested. *Scott v. Thomas*, supra. There is no merit in this enumeration.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED APRIL 4, 1985.

*J. Richard Porter III*, for appellant.
*Harry J. Altman II*, for appellee.