71740. JOHNSON v. AMERSON et al.
(345 SE2d 94)

DEEN, Presiding Judge.
Henry B. Johnson, plaintiff in the action below, complains of rul-

ings made in the trial court pertaining to uninsured motorist coverage and certain charges given during the trial of the case.

1. Appellant is dissatisfied because Commercial Union Insurance Company, the uninsured motorist carrier, was permitted to be included as a party to the action.

OCGA § 33-7-11 (d) which sets forth requirements for filing an action where an uninsured motorist is involved, provides in part: "In the case of a known owner or operator of such vehicle, either or both of whom is named as a defendant in such action, the insurance company issuing the policy shall have the right to file pleadings and take other action allowable by law in the name of either the known owner or operator or both or itself." Appellant argues that by permitting the insurance company to file defensive pleadings and a cross-claim, the issue of insurance was introduced into the case to his prejudice. This argument has been refuted in *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165 (268 SE2d 676) (1980). In that case the court recognized the right of the insurance company to file defensive pleadings in its own behalf. This right permits consolidation, at the election of the insurer, of two suits; one against the known or unknown tortfeasor, and the other against the insurer. See also *Smith v. Phillips*, 172 Ga. App. 459, 464 (323 SE2d 669) (1984).

OCGA § 33-7-11 (d) also grants the uninsured motorist carrier the right to file a cross-claim. It is simply a means of perfecting its subrogation right granted under OCGA § 33-7-11 (f) in the event a judgment is obtained against the uninsured motorist. We cannot say that the taking of an authorized action was prejudicial to the appellant and required the action to be severed. We especially note that the jury found both parties to be equally at fault and that no recovery should be had against the uninsured motorist.

2. Appellant also contends that the court below erred in giving certain charges concerning the disposition of the cross-claim in the event a verdict was returned in his favor and pertained to the apportionment of damages and the measure of damages. Since the verdict was returned in favor of the defendant on the question of liability, we find that when they pertain only to matters of damages or measure of damage an alleged error is harmless and does not serve as a basis for reversal. *Big Bend Agri-Svcs. v. Bank of Meigs*, 174 Ga. App. 493, 496 (330 SE2d 422) (1985); *Maloy v. Dixon*, 127 Ga. App. 151 (193 SE2d 19) (1972).

3. As appellant's time for filing an enumeration of errors expired on October 30, 1985, we find that an amendment filed after that date cannot be considered by this court. *Burke v. State*, 153 Ga. App. 769 (266 SE2d 549) (1980).

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Sognier, Pope and Benham, JJ., concur. Carley, J., concurs specially. Beas-*

*ley, J., dissents. Banke, C. J., concurs in the judgment only of the dissent.*

CARLEY, Judge, concurring specially.

I concur in the majority's judgment affirming the trial court. In this connection, I understand the concerns of the dissenting opinion with regard to the injection of the matter of uninsured motorist insurance into the tort trial. However, as was the case in *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (310 SE2d 513) (1984), affirming *Allstate Ins. Co. v. McCall*, 166 Ga. App. 833 (305 SE2d 413) (1983), the appellate courts must construe the statutes as they are written and leave policy determinations to the legislature. The problem with the dissenting opinion is that it construes certain language in *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165 (268 SE2d 676) (1980) with emphasis inappropriate to the context in which the issue sub judice is presented. There simply is no authority for limiting the right of an insurer to elect to become an actual litigating party to only those cases wherein coverage vel non is an issue. In this case, the insurer made its election to become a party and, thus, it is entitled to participate as a party under the Civil Practice Act to the same extent as would any other party litigant.

BEASLEY, Judge, dissenting.

This is another case illustrating the procedural difficulties of trying to serve judicial economy while at the same time protecting the parties in a negligence action from the injection of insurance into the suit. The legislature and the courts have been at it a long time and have constructed a balanced scheme of procedures. OCGA § 33-7-11. See, insofar as relevant to this case, *Home Indem. Co. v. Thomas*, 122 Ga. App. 641 (178 SE2d 297) (1970); *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165 (268 SE2d 676) (1980); *Tennessee Farmers Mut. Ins. Co. v. Wheeler*, 170 Ga. App. 380 (317 SE2d 269) (1984); *Smith v. Phillips*, 172 Ga. App. 459 (323 SE2d 669) (1984). The joint effort at fine-tuning so as to protect all interests is exemplified by *Allstate Ins. Co. v. McCall*, 166 Ga. App. 833 (305 SE2d 413) (1983) of this court, which was affirmed by the Supreme Court, *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (310 SE2d 513) (1984), and the statute thereafter revised, Ga. L. 1984, p. 839, OCGA § 33-7-11 (j).

In this case, as in many arising out of motor vehicle collisions involving an uninsured motorist, there were four potential claims. One, Johnson, as an injured party, against Amerson as the tortfeasor. Two, Amerson, as an injured party, against Johnson as the tortfeasor. Three, Johnson as insured against his insurer for fulfillment of the policy coverage (or a declaratory judgment action by the insurer

against the insured to establish contract liability[1]). Four, insurer against the tortfeasor by way of subrogation of the rights of its insured, pursuant to OCGA § 33-7-11 (f).

The first cause of action was pressed. The second, which would be a counterclaim, was not. However, Amerson filed his defense that the collision was Johnson's own fault, and Johnson's insurer joined Amerson by filing a defense in its own name asserting that its insured was at fault. This it was permitted to do by OCGA § 33-7-11 (d).

The third cause of action, of course, has not accrued because Johnson did not obtain a judgment against Amerson. Such a judgment is a condition precedent to such a suit by the insured against his uninsured motorist carrier, unless the carrier elects to become a party to the tort action and there is no issue of coverage or the issue of coverage is resolved against it. That is to say, if it were a party and thus before the court, and the jury gave an award to its insured against the tortfeasor on the issue of negligence and also against it on the issue of coverage (or there was no issue of coverage made), there would be no reason not to enter judgment against it to the extent of the policy limits. See *Smith*, supra at 465. However, such judgment would be limited to the amount of the judgment against the tortfeasor and the policy limits, because the insured must bring a separate action for bad faith penalty and attorney fees. OCGA § 33-7-11 (j) provides: "The question of bad faith, the amount of the penalty, if any, and the reasonable attorney's fees, if any, shall be determined in a separate action filed by the insured against the insurer after a judgment has been rendered against the uninsured motorist in the original tort action."

The fourth cause of action is the insurer's right of subrogation. It is a statutory cause granted in OCGA § 33-7-11 (f). By the clear terms in the statute, it arises when the insurer pays its insured: "An insurer paying a claim . . . shall be subrogated to the rights of the insured to whom the claim was paid . . . to the extent that payment was made . . . ."

Thus the cross-claim filed by the insurer in this case was premature. It had not paid its insured anything, as is evident from the very words and nature of its cross-claim. It seeks a judgment against Amerson "for any amounts which it may be obligated to pay" its insured by virtue of a judgment in its insured's favor. It had no right of action unless and until it paid, either in advance of judgment[2] or after its insured won a judgment from the uninsured motorist. The in-

---

[1] Once this tort action was commenced and insurer served, however, that alternative was foreclosed. (See *Tennessee Farmers*, supra).

[2] Which it is not obligated to do, see *Allstate*, supra, 166 Ga. App. at 834, which point is not affected by the statute revision.

surer's efforts to avoid first having to pay, and then seeking recovery against the uninsured tortfeasor, while financially commendable insofar as its interests are concerned, is simply not allowed by the law which creates its cause of action, i.e., subsection (f). And for good reason. Whereas in other types of cases, cross-claims are allowed by the CPA (OCGA § 9-11-13 (g)) when "the party against whom it is asserted is or may be liable to the cross-claimant," so as to serve judicial economy, yet in the type of case here at issue the legislature has chosen to serve a higher interest. That is the non-insertion of insurance into the tort suit. The significance of guarding against this inherently prejudicial factor is acknowledged in *Smith*, supra at 463-464, and it quotes *Moss*, supra, on this point, with emphasis. The legislature prevents insurance's insertion by delaying the accrual of a right of action until the insurer has paid.

Consequently, the court erred in allowing this cross-claim, which did not assert a claim at all because any cause of action which insurer might acquire had not yet matured, to be brought into the trial of this case. And with this empty cross-claim came its damaging baggage of the factor of insurance, evidence which was inherently prejudicial to the interests of Johnson in the determination of tort liability. What was said in *Smith*, supra at 464, underscores a commonly understood principle: "the trial court should have granted the motion (for mistrial) or rebuked or reprimanded offending counsel in a manner reasonably sufficient to remove the harmful effect had upon the jury. *Ga. Mut. Ins. Co. v. Willis*, 140 Ga. App. 225 (5) (230 SE2d 363) (1976)."[3]

The purpose of allowing the plaintiff's uninsured motorist carrier to defend in its own name is "to facilitate the administration of litigation" by allowing the tort liability and the insurer's contract liability to be resolved in the same lawsuit. *Moss*, supra at 169. By defending in its own name, the insurer acquires the right to litigate not only the tort liability of the uninsured motorist (which right it also would have by filing and defending in the uninsured motorist's name, thereby maintaining its non-party status), but also the right to litigate the issue of its liability for coverage. If it elects to defend in its own name so as to litigate coverage, of course, it takes the chance of prejudicing itself by its presence before the jury in the lawsuit; the jury then knows that if it finds the tortfeasor (who is sometimes a pitiable defendant) liable, the insurance company will have to pay. The choice of whether to defend directly or indirectly is left up to the insurer, by the legislature. OCGA § 33-7-11 (d). But where that issue of coverage does not exist, there is no basis or reason for the insurer to defend in

---

[3] The fact that the verdict favored the defendant in the instant case does not answer the appellant's complaint against jury charges relating to the cross-claim, for the very reason that they infected that verdict.

its own name, other than to inject insurance into the case.

The court in *Moss, supra* at 170, said: "*if* the insurer takes the position that, regardless of tort liability, there is no liability to the insured under the policy, it *may* plead in its own name and receive an adjudication on that issue without resorting to an action for declaratory judgment or being put to the expense of defending two lawsuits." (Emphasis supplied.)

In this case the issue of coverage does not exist and the subject of insurance should not have been introduced before the jury. Allowing it contravenes the intent of the legislature which is evidenced by the carefully balanced scheme laid out in the statute. The plaintiff tried at least seven different ways to keep the subject out: motion at pretrial conference, motion in limine, motion for partial summary judgment, motion to sever, objections to jury charges, objections to argument, and objection to form of verdict.

It not having been done, I would reverse.

I concur in Division 3 of the opinion.

I am authorized to state that Chief Judge Banke concurs in the judgment only of this dissent.

DECIDED APRIL 24, 1986 —
REHEARING DENIED MAY 12, 1986 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*James D. Hudson*, for appellant.
*Dewey N. Hayes, Sr., O. Wayne Ellerbee*, for appellees.