475 S.E.2d 107 (1996)
197 W.Va. 107
STATE of West Virginia ex rel. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Honorable Herman G. CANADY, Jr., Judge of the Circuit Court of Kanawha County, and Eric L. Coleman, an Infant, by his Father, Guardian and Next Friend, Terry L. Coleman, and Terry L. Coleman, Individually, Respondents.
No. 23269.
Supreme Court of Appeals of West Virginia.
Submitted March 5, 1996.
Decided July 12, 1996.
*109 David A. Mohler, James W. Gabehart, Campbell, Woods, Bagley, Emmerson, McNeer & Herndon, Charleston, for Petitioner.
David L. Stuart, Robert A. Taylor, Masters & Taylor, Charleston, for Respondents.
*108 WORKMAN, Justice.
State Farm Mutual Automobile Insurance Company ("State Farm") seeks to appear in its own name as the plaintiff's uninsurance carrier rather than to defend in the name of the uninsured motorist. In response to the trial court's adverse ruling on this issue, State Farm seeks a writ of prohibition against The Honorable Herman G. Canady, Judge of the Circuit Court of Kanawha County. Based on our conclusion that West Virginia Code § 33-6-31(d) (Supp.1995) permits State Farm as the uninsurance carrier to appear and defend in its own name, we grant the requested writ of prohibition.
On January 2, 1992, a hit-and-run accident occurred which resulted in injuries to Eric L. Coleman. Eric's father instituted a civil action against the driver of the vehicle on December 10, 1993, seeking damages for Eric's injuries as well as damages for negligent infliction of severe emotional distress for himself. Pursuant to West Virginia Code § 33-6-31(d), the Colemans served State Farm as their uninsured motorist carrier with a copy of the complaint. State Farm filed an answer to the complaint in the name of Claud L. Slate, the uninsured motorist, on January 6, 1994. Then, on October 18, 1994, State Farm filed a notice with the court stating that it intended to "defend[] this case in its own name rather than in the name of the uninsured."
The Colemans first took issue with State Farm's intent to defend in its own name at a hearing on March 7, 1995. The circuit court directed both State Farm and the Colemans to submit memoranda in support of their respective positions.[1] On June 12, 1995, the trial court heard oral arguments on this issue and ruled that State Farm was prohibited from appearing in its own name or directly defending its interests on behalf of the uninsured motorist. State Farm filed a writ of prohibition with this Court on June 16, 1995, which was denied without prejudice.[2]
*110 The trial court granted State Farm's motion for a continuance on June 21, 1995,[3] due to witness unavailability, and subsequently decided to submit the following certified question to this Court:
Provided State Farm is not making any policy defense in this case, may it, pursuant to West Virginia Code § 33-6-31(d) appear at trial in its own name and may State Farm's attorney identify himself as State Farm's attorney, rather than the attorney for the alleged tortfeasor, Claud L. Slate, II?
The trial court answered the certified question in the negative. The petition presenting the above certified question to this Court was denied on January 9, 1996, based on jurisdictional grounds. State Farm filed the instant writ of prohibition with this Court on January 12, 1996, seeking to be permitted to appear and defend in its own name.
At issue is the following statutory language:
Any insured intending to rely on coverage required by subsection (b) of this section [33-6-31] shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.
W. Va.Code § 33-6-31(d) (emphasis supplied). State Farm contends that the underscored statutory language clearly permits it to appear and defend in its own name without reference to whether it is raising any policy defenses. Conversely, the Colemans argue that under State ex rel. Allstate Insurance Co. v. Karl, 190 W.Va. 176, 437 S.E.2d 749 (1993), cert. denied, 510 U.S. 1194, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994), the uninsured motorist carrier can only be a named participant in the underlying negligence action when the carrier raises policy defenses. In addition, the Colemans submit that State Farm waived its right to appear and defend in its own name by initially answering the complaint in the name of the uninsured motorist.
We note initially that the parties concur that under West Virginia Code § 33-6-31(d) State Farm has the right to appear and defend in its own name to assert policy defenses. The question presented through this case, however, is whether, in the absence of such policy defenses, an uninsured motorist carrier may still appear and defend in its own name.
The Colemans suggest that the following language found in syllabus point fourteen of Karl resolves the issue: "The language of W. Va.Code, 33-6-31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." 190 W.Va. at 179, 437 S.E.2d at 752. That syllabus language cannot be viewed in a vacuum; it must be considered in the context of the entire opinion. Unlike this case, the tortfeasor in Karl had liability insurance and the primary carrier was actively defending the case.[4] The issue presented in Karl was whether an underinsurance carrier had a right to file pleadings and separately defend along with the alleged tortfeasor's own insurance carrier. We concluded that an underinsured motorist did not "have a due process right to assume *111 independent control of the defense of a tortfeasor who is represented by a liability carrier." Id. at 185, 437 S.E.2d at 758. We further held that the right granted pursuant to West Virginia Code § 33-6-31(d) which permits the underinsurance carrier to file an answer in its own name "was [not] intended to give the underinsured carrier the right to separately defend along with the tortfeasor's carrier." 190 W.Va. at 186, 437 S.E.2d at 759. Given the numerous factual and legal distinctions between the present case and Karl, we conclude that the Karl decision is simply not dispositive of the issue before us.
We quickly dispense with the waiver argument raised by the Colemans. Finding nothing in the language of West Virginia Code § 33-6-31(d) that would prohibit a carrier from altering its mode of appearance, we disagree with the Colemans' contention that State Farm should be precluded from appearing in its own name simply because it elected to do so after initially filing an answer on behalf of and in the name of the uninsured motorist. See Nolan v. Boulware, 21 N.C.App. 347, 204 S.E.2d 701, 705 (1974), cert. denied, 285 N.C. 590, 206 S.E.2d 863 (1974) (upholding uninsured carrier's decision to defend in its own name after first answering on behalf of the uninsured motorist, reasoning that "we find nothing in the statute which requires that its [the carrier's] decision as to which name it will defend in, once made, must be irrevocable"). We note additionally that the Colemans have failed to demonstrate that they have been prejudiced in any way by State Farm's decision to appear and defend in its own name.[5]
State Farm admits that its objectives in electing to appear and defend in its own name are twofold: (1) to distance itself from the defendant tortfeasor; and (2) to persuade the jury to render a smaller verdict in view of the fact that it, rather than the defendant tortfeasor, will be the party actually rendering payment to the plaintiffs. The Colemans suggest that both of these interests are contrary to public policy as well as prior holdings of this Court.
The public policy behind statutorily-required uninsured motorist benefits, as we recognized in State Automobile Mutual Insurance Co. v. Youler, 183 W.Va. 556, 396 S.E.2d 737 (1990), is "that the injured person be fully compensated for his or her damages not compensated by a negligent tortfeasor, up to the limits of the uninsured ... motorist coverage." Id. at 564, 396 S.E.2d at 745. The premise underlying the Colemans' position is that State Farm's appearance in its own name will necessarily reduce the amount of their recovery.[6] This premise, however, is merely speculation. The enactment of uninsured motorist statutes was "never intended to ... impose absolute liability on insurers whenever an uninsured motorist is involved...." State Farm Mut. Auto. Ins. Co. v. Tarantino, 114 Ariz. 420, 561 P.2d 744, 747 (1977); accord Lee v. Saliga, 179 W.Va. 762, 765, 373 S.E.2d 345, 348 (1988). We explained in Saliga that uninsured motorist coverage is statutorily invoked upon proof by the plaintiff that he/she is "legally entitled to recover ... damages from the owner or operator of an uninsured motor vehicle...." W. Va.Code § 33-6-31(b); 179 W.Va. at 765, 373 S.E.2d at 348. The Colemans must first prove damages arising from the actions of the uninsured motorist before State Farm is obligated to provide uninsured motorist benefits. Thus, only if the Colemans could demonstrate that State Farm's decision to appear and defend in its own name would prevent them from receiving full compensation for their damages would the public policy underlying West Virginia Code § 33-6-31 be contravened.[7] Since we are unable to reach the conclusion that the Colemans will not be "fully compensated" as a result of State Farm's decision to appear in its own name, *112 we reject the Coleman's public policy argument. Youler, 183 W.Va. at 564, 396 S.E.2d at 745.
We similarly repudiate the Colemans' contention that our explanation in Karl that "the language of W. Va.Code, 33-6-31(d), that allows an uninsured ... carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses" controls the issue of whether State Farm can appear and defend in its own name when it is not asserting policy defenses. 190 W.Va. at 186, 437 S.E.2d at 759 (emphasis supplied). Augmenting our previous discussion of Karl's distinguishability from this case, we observe that our inclusion of the term "primarily" in Karl inherently acknowledges that the statutory language at issue may contain other objectives in addition to permitting the carrier the opportunity to assert policy defenses. Moreover, a careful reading of Karl demonstrates that this Court foresaw that the uninsured carrier would in some cases be controlling the defense: "Where the tortfeasor has no liability coverage, the plaintiff's uninsured motorist carrier would be the only insurance carrier exposed to the plaintiff's liability claim. In most instances, the uninsured carrier would then control the defense." Id. at 181, 437 S.E.2d at 754 n. 7.[8]
That an uninsured motorist carrier has a legislated right to defend on behalf of the uninsured motorist is well-settled. The Tennessee Court of Appeals examined Tennessee's statute that significantly parallels[9] West Virginia Code § 33-6-31(d) and observed:
It seems clear to this Court that by allowing the uninsured motorist carrier to defend the tort action on behalf of the insured or in its own name, the legislature intended to prevent a situation in which the uninsured motorist carrier would be bound by a default judgment against an uninsured motorist who may have no interest in defending the case.... The uninsured motorist carrier has the right to defend the tort action, and the defense must necessarily be on behalf of the uninsured motorist....
T.C.A. § 56-7-1206 provides the procedure by which uninsured motorist coverage protects an insured party and also establishes a safeguard for the insurer against the whim of the uninsured motorist.
Witter v. Nesbit, 878 S.W.2d 116, 119 (Tenn. Ct.App.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994) (emphasis supplied). The uninsured motorist carrier's right to defend was similarly recognized in Moss v. Cincinnati Insurance Co., 154 Ga. App. 165, 268 S.E.2d 676 (1980):
[A]ppellee [uninsured motorist carrier] occupied in this litigation the position of a named party defendant by virtue of its election to file pleadings in its own name. With that status comes the right to contest the liability of the alleged tortfeasor and any resulting liability under the policy, including the right to assert a failure by the insured to comply with a condition precedent to recovery against the insurance carrier. Of course, with the right to defend there must come the attendant risk of defeat, which would result in a judgment against the insurance carrier in favor of the insured for the amount the insured *113 would be legally entitled to recover from the tortfeasor.
Id. 268 S.E.2d at 680 (emphasis supplied).
Other jurisdictions have concluded under differing legal and factual scenarios that the jury is entitled to be aware of the uninsured motorist carrier's identity. See Oliver v. Perry, 293 Ala. 424, 304 So.2d 583 (1974) (upholding informing jury of uninsured motorist carrier's status); Johnson v. Amerson, 179 Ga.App. 75, 345 S.E.2d 94 (1986) (upholding uninsured motorist carrier's participation as named party despite insured's claim that insurance issue was prejudicially introduced through carrier's filing of defensive pleadings and cross claim); Wheeler v. Creekmore, 469 S.W.2d 559, 563 (Ky.Ct.App.1971) (commenting that "the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured motorist cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial"); Lima v. Chambers, 657 P.2d 279 (Utah 1982) (holding that identity of intervening uninsured motorist carrier should be made known to jury and that insurer must disclose to its insured that their respective interests may be conflicting).
As a final attempt at preventing State Farm from appearing in its own name in this case, the Colemans raise the issue of improper insertion of insurance into the case. The Colemans argue that Davis v. Robertson, 175 W.Va. 364, 332 S.E.2d 819 (1985), overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden, 192 W.Va. 155, 451 S.E.2d 721 (1994), established a policy of "avoid[ing] the unnecessary mention of insurance coverage at trial because of its possibly prejudicial effect on the jury's verdict." 175 W.Va. at 368, 332 S.E.2d at 823. Relying primarily on Davis, the Colemans suggest that State Farm's desire to appear in its own name would violate this policy against alluding to insurance coverage. We recently reexamined this issue in Reed v. Wimmer, 195 W.Va. 199, 465 S.E.2d 199 (1995), explaining that
[t]he prevailing view among the commentators is that evidence of insurance is rarely prejudicial: "[T]he underlying soundness of the general rule forbidding disclosure of the fact of insurance has been the object of scathing criticism.... Its costs include extensive and unnecessary arguments, reversals, and retrials stemming from elusive questions of prejudice and good faith. This state of affairs might be tolerable if the revelation of insurance were truly fraught with prejudice. But, ... most jurors probably presuppose the existence of liability insurance anyway, and the heart of the policy nondisclosure is surrendered when jurors are examined about their connection with insurance companies. Consequently, the extent to which evidence of coverage or its absence is prejudicial is unclear. Even the direction in which such prejudice might work is obscure."
Id. at 208, 465 S.E.2d at 208 (quoting McCormick On Evidence § 210 at 597 (3rd ed. 1984)) (footnotes omitted); accord 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia, Lawyers § 4-11(A) at 429-30 (3rd ed. 1994) (noting "the tendency now is to take a less serious view of the disclosure of the existence of liability insurance" and that "it is difficult to perceive how the mere mentioning of insurance could ever be reversible error").
We established in syllabus point two of Reed a presumption of protection from prejudice in favor of the insured when the issue of insurance is introduced at trial:
An insured is presumed to be protected from undue prejudice from the admission of evidence of insurance at trial if the following requirements are met: (1) the evidence of insurance was offered for a specific purpose other than to prove negligence or wrongful conduct; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court delivered a limiting instruction advising the jury of the specific *114 purpose(s) for which the evidence may be used.
195 W.Va. at 201, 465 S.E.2d at 201. In syllabus point three of Reed we clarified the standard for determining whether prejudice results from the interjection of insurance during a trial:
Where evidence of insurance is wrongfully injected at a trial, its prejudicial effect will be determined by applying the standard set out in Rule 103(a) of the West Virginia Rules of Evidence. In addition to the possibility that the jurors are already aware of the existence of insurance, the trial court should consider the relative strength of each of the parties['] case or the lack of it, whether the jury was urged by counsel or the witness to consider insurance in deciding the issue of negligence or damages, whether the injection of insurance was designed to prejudice the jury, whether the mention of insurance was in disregard of a previous order, and whether a curative instruction can effectively dissipate any resulting prejudice.
195 W.Va. at 201, 465 S.E.2d at 201.
Given the current consensus that the introduction of insurance is not per se prejudicial and that the potential for prejudice can be rectified with sound trial management precautions, including a limiting instruction, we are unpersuaded by the Colemans' contention of insurance prejudice. See id. at 208, 465 S.E.2d at 208. Moreover, it is possible that the mentioning of insurance in this case may prove harmful to State Farm and beneficial to the Colemans. See Safeco Ins. Co. v. United States Fidelity & Guar. Co., 101 N.M. 148, 679 P.2d 816, 820 (1984) (recognizing that prejudicial tendencies of revealing insurance "can go in both directions"). State Farm has chosen to "waive its right not to have insurance mentioned in the tortfeasor's liability case." Karl, 190 W.Va. at 186, 437 S.E.2d at 759 n. 17. In so doing, State Farm is taking a calculated risk by assuming that the jury will render a verdict more favorable to it with knowledge of who is paying the bill. Certainly, this trial tactic may backfire on State Farm.
Reaching the ultimate issue before us, we are in agreement with the Georgia Court of Appeals:
There simply is no authority for limiting the right of an insurer to elect to become an actual litigating party to only those cases wherein coverage vel non [or not] is an issue. In this case, the insurer made its election to become a party and, thus, it is entitled to participate as a party ... to the same extent as would any other party litigant.
Johnson, 345 S.E.2d at 95 (Carley, J., concurring) (rejecting dissenting justice's position that uninsured motorist carrier's participation wrongfully injects insurance into trial where no coverage issue exists). Accordingly, we hold that pursuant to West Virginia Code § 33-6-31(d), an uninsured motorist carrier is entitled to appear and defend in its own name rather than that of the uninsured tortfeasor even when policy defenses raising issues of coverage are not asserted by the carrier.
The participation at trial of an uninsured motorist carrier necessarily raises certain concerns. In ruling that an uninsured motorist carrier was entitled to intervene in the tort action between its insured and the uninsured motorist tortfeasor, the court in Chambers admonished that the "insurer must not be allowed to use against its insured any information whatsoever gained by reason of the insurer-insured relationship." 657 P.2d at 285 (citing Barry v. Keith, 474 S.W.2d 876 (Ky.1971)). The court further noted that when an uninsured motorist carrier is involved in a negligence suit filed by its own insured "some conflict of interests appears to be inevitable[,]" but that "the interest of fairness and judicial economy outweigh ... the potential difficulties arising from a conflict on interest." 657 P.2d at 285 n. 3; see generally 8C John Alan Appleman & Jean Appleman, Insurance Law and Practice § 5089.55 (1981); 12A Ronald A. Anderson et al. Couch on Insurance 2d § 45:647 (1981 & Supp.1995).
Discussing the dual role that an uninsured motorist carrier has, the court in Hendren v. Allstate Insurance Co., 100 N.M. 506, 672 P.2d 1137 (Ct.App.1983) observed:

*115 The difficulty arises because the insurer, on the one hand, sold the policy and thus has an obligation to its insured, unlike third-party coverage situations. On the other hand, however, the insurer assumes an adversary role as to questions involving the uninsured motorist's negligence and any available defenses he might have.
Id. 672 P.2d at 1141. Adopting the reasoning of Craft v. Economy Fire & Casualty Co., 572 F.2d 565 (7th Cir.1978),[10] the Hendren court held that "in spite of its adversary interest, an insurer continues to have a duty to deal fairly and in good faith with its insured in settling a claim under the uninsured motorist provisions of the automobile insurance contract." 672 P.2d at 1141. Similarly, the court in State Farm Mutual Automobile Insurance Co.v. Shrader, 882 P.2d 813 (Wyo.1994), held that "an insurer providing uninsured motorist coverage ... owes a duty of good faith and fair dealing to the insured at all times." Id. at 827.
We have previously recognized an insurer's obligation of good faith and fair dealing to its insured. See Syl. Pt. 4, Shamblin v. Nationwide Mut. Ins. Co., 183 W.Va. 585, 587, 396 S.E.2d 766, 768 (1990); see also Syl. Pt. 5, Karl, 190 W.Va. at 178, 437 S.E.2d at 751 (holding that primary insurance carrier has duty to act in good faith with respect to excess or additional insurance carrier when defending claim on behalf of primary insurance carrier's insured). The policy arguments in favor of enforcing that obligation strictly against uninsured motorist carriers are convincing:
Unlike any other type of first party insurance, the uninsured motorist coverage is the subject of a legislative mandate in forty-nine states. The various state insurance lawsthat establish the requirements for uninsured motorist insuranceare clearly intended to benefit all insureds, and the attainment of this goal certainly encompasses requiring the fair and equitable settlement of uninsured motorist insurance claims. Unreasonable conduct by an insurer frustrates the public policy embodied in the applicable state insurance legislation, as well as breaching the implied-in-law duty to deal fairly and in good faith. Thus, the standard by which the conduct of insurers is judged arguably should be higher for uninsured motorist claims than it is for first party insurance coverages that are not mandated by statute. In other words, given the fact that uninsured motorist insurance is the subject of statutory requirements in forth-nine states, a persuasive argument can be made for the proposition that the duty of an insurer to act in good faith and fairly should be of the highest order in regard to claims arising under this coverage. The public interest in this coverage means that insurers should be obligated to exercise the greatest care and highest level of good faith and fair dealing.
Shrader, 882 P.2d at 826 (quoting 2 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 20.4 at 161-62 (2nd ed. 1992) (footnote omitted)). To resolve any doubts regarding the application of this obligation to uninsured motorist law, we hold that uninsured motorist carriers providing coverage pursuant to West Virginia Code § 33-6-31 owe an obligation of good faith and fair dealing to their insureds at all times.
*116 Based on the foregoing, we hereby grant the requested writ of prohibition.
Writ granted.
NOTES
[1] The Colemans never submitted the memorandum requested by the trial court.
[2] State Farm's petition seeking a writ of prohibition was presented for this Court's consideration on the same date that the trial below began June 19, 1995. This Court denied the writ of prohibition due to its last minute filing.
[3] At this point, only pretrial matters had been discussed and a jury empaneled.
[4] In contrast to underinsured motorist cases which involve issues of secondary coverage, uninsured motorist cases are cases of "first party" protection. Lee v. Saliga, 179 W.Va. 762, 765, 373 S.E.2d 345, 348 (1988); accord Marshall v. Saseen, 192 W.Va. 94, 99, 450 S.E.2d 791, 796 (1994); see Karl, 190 W.Va. at 181, 437 S.E.2d at 754 (noting that "[u]nder our statutory scheme, the role of an underinsured carrier is analogous to that of a secondary or excess carrier").
[5] The Colemans waited almost five months before raising any objection to State Farm's decision to appear in its own name.
[6] The flip side of this argument, however, is that a plaintiff in this situation might reasonably believe that a jury could be influenced against a tortfeasor because of his absence and, as a result, might be inflamed to render a larger verdict against the tortfeasor.
[7] The trial judge would be in the best position in a case such as this to assure that this does not occur, both by sound trial management and, where necessary, by appropriate instruction.
[8] While this note in Karl was made without reference to whether a policy defense is raised, it presumes to cover all cases where the tortfeasor is without liability coverage and therefore unrepresented by insurance counsel. Karl further explains that West Virginia Code § 33-6-31(d) provides for the employment of separate counsel by the uninsured motorist. See W. Va.Code § 33-6-31(d) ("Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding.") We also observed in Karl that "if the uninsured carrier is acting in bad faith in its defense of the tortfeasor, the tortfeasor's attorney may seek to control the defense." 190 W.Va. at 181, 437 S.E.2d at 754, n. 7.
[9] The only difference between the Tennessee statute and West Virginia Code § 33-6-31(d) is that the Tennessee statute omits the terms "or both" with reference to whether the uninsured carrier can file pleadings and take action in the name of the owner and operator of the uninsured vehicle or in its own name. See Witter v. Nesbit, 878 S.W.2d 116, 119 (Tenn.Ct.App.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994)(quoting Tenn.Code Ann. § 56-7-1206 (1989)).
[10] The court in Craft explained why imposing a duty of good faith on an uninsured motorist carrier was not inconsistent with

the substituted liability nature of uninsured motorist coverage and the consequent adversary relationship between insurer and insured.... Uninsured motorist coverage represents substituted liability only in the sense that a determination that the uninsured motorist is legally liable to the insured is a condition precedent to the obligation of the insurer to pay off on the policy. In this determination the insurer stands in the shoes of the uninsured motorist with regard to the question of whether the latter was negligent and with regard to his defenses such as contributory negligence. This does not make the insurance company an insurer in fact of the uninsured motorist. Their relationship is not characterized by the rights and duties normally incident to the relationship between an insured and his insurer under a third party liability policy. Moreover, it does not make the insurer a stranger to its insured. After all, the insured is the one who pays the premiums for the uninsured motorist protection and the "reasonable expectation" that he will be dealt with fairly and in good faith by his insurer is still present.
572 F.2d at 568-69.