720 A.2d 989 (1998)
316 N.J. Super. 570
Fred WENZ and Madeline Wenz, Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE CO., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1998.
Decided December 16, 1998.
*990 Frederick H. Allen, III, Somerville, for plaintiffs-appellants (Mauro, Savo, Camerino & Grant, attorneys; Mr. Allen, on the brief).
James D. Bride,Cedar Knolls, for defendant-respondent (Leary, Bride, Tinker & Moran, attorneys; Mr. Bride, of counsel; Arla D. Cahill, on the brief).
Before Judges BAIME, CONLEY and A.A. RODRIGUEZ.
The opinion of the court was delivered by CONLEY, J.A.D.
This appeal arises from a jury verdict on personal injury damages. Plaintiff was seriously injured in a snowmobile accident, ultimately requiring the removal of his spleen with post-operative complications and a period of hospitalization. Although he seems to have recovered with few residuals, the loss of his spleen presents, according to the undisputed testimony of his doctor, a probability of a 58% risk of incurring asplemic sepses (infection) and, if incurred, a 50% to 75% risk of death. Fortunately, as of the date of his jury trial on damages, five years from the accident, plaintiff had not incurred such infection. Initially, plaintiff sought recovery from the tortfeasor. When it became clear that the tortfeasor was uninsured, plaintiff brought an action on his own uninsured motorist policy. The jury returned a verdict of $15,000 with a $5,000 per quod award for plaintiff's wife.
On appeal, plaintiff contends:
POINT I. THE VERDICT OF $15,000 FOR THE CONSEQUENCES OF THE TRAUMATIC INJURY TO FRED WENZ WAS SO DISPROPORTIONATE AS TO SHOCK THE CONSCIENCE, JUSTIFYING JUDICIAL INTERFERENCE WITH THE QUANTUM OF DAMAGES ASSESSED.
POINT II. A PROBABLE MISUNDE STANDING AND JURY CONFUSION CONTRIBUTED TO THE INSUFFICIENT VERDICT.
POINT III. THE COURT ERRED IN REFUSING TO CHARGE FEAR OF DEVELOPING FUTURE DISEASE.
POINT IV. A NEW TRIAL ON DAMAGES, OR ALTERNATIVELY ADDITUR SHOULD HAVE BEEN GRANTED.
We have considered these contentions in light of the applicable law and entire record. We address points I and II as we are convinced, considered together, and perhaps for a slightly different reason, a reversal is required. As to point III, we comment only that since there will be a retrial, and depending upon the evidence presented, the trial judge should reconsider plaintiff's request for a Mauro v. Raymark Industries, 116 N.J. 126, 561 A.2d 257 (1989), charge.
We acknowledge at the outset that we are not necessarily convinced the verdict here was so shockingly disproportionate as to warrant a new trial. In denying plaintiff's motion for new trial, the judge observed:
It is worth noting that the plaintiff was able to drive his snowmobile from the scene of the accident and the potential for future consequences from his injury was minimal. Finally, the jury was aware that the plaintiff worked in a family business and lost no pay. This circumstance could also have lessened greatly the impact or even credibility of the alleged one year inability to work.
We suppose there was some basis for the jury's discounting the evident seriousness of plaintiff's injuries and the consequent pain and suffering, albeit from which he recovered, such that the award itself might not be considered manifestly unjust. Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977). We need not, therefore, set forth all of the details concerning those injuries and their impact upon him. But suffice it to say, there is much to the trial judge's astonishment upon first learning of the jury verdict when he said "[t]his, I didn't expect."
As we have set forth at the outset, the case arose as an uninsured motorist (UM) action against plaintiff's own carrier because the tortfeasor had no insurance. But the sole issue for the jury was the nature and extent of plaintiff's injuries and the amount of money needed to recompense him therefor. The fact that the monies were to come from *991 a UM policy, the existence or nonexistence of coverage of the tortfeaser, and the amount of coverage plaintiff might have under his own policy, not only is clearly irrelevant to the issue of damages, but potentially quite prejudicial if revealed to the jury.
We have recently observed that, "[a]s a general rule, the probative value of information regarding whether a person is insured or not is substantially outweighed by the potential for undue prejudice." Krohn v. New Jersey Full Insurance Underwriters Assoc., 316 N.J.Super. 477, 481-82, 720 A.2d 640 (App.Div.1998). Cf. N.J.R.E. 411. On the one hand, awareness by the jury of the existence of insurance is thought to present the danger of an award of damages based upon the "deep pockets" of the carrier. Biunno, Current N.J. Rules of Evidence, comment to N.J.R.E. 411, at 439 (1998-99), (citing Judson F. Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L.Rev. 574, 594 (1956)). On the other hand, "the potential of evidence of lack of insurance for prejudicing a plaintiff's cause is obvious. The jury may feel sorry for the defendant and either exonerate him completely or return a much lower verdict against him than the facts warrant." Id. at 440. See Brandimarte v. Green, 37 N.J. 557, 563, 182 A.2d 562 (1962) ("[r]egardless of the manner in which a [party's] insurance status becomes known to the jury, such information had the capacity to beget a verdict based, not upon legal proofs and the court's charge, but rather upon prejudice or sympathy for one of the litigants"). Dalton v. Gesser, 72 N.J.Super. 100, 106, 178 A.2d 64 (App.Div.1962) ("[w]hether done directly or indirectly, it would have been improper to advise the jury that the defendant was insured [,and] [i]t would have been likewise improper to ... indicate to the jury the absence of insurance." (citation omitted)). See also Pickett v. Bevacqua, 273 N.J.Super. 1, 5, 640 A.2d 1173 (App.Div.1994) (in a PIP case, reference to plaintiff's election to have lower verbal threshold coverage was reversible error because "[t]he statements bore no relevance to the issues before the jury [,and] [t]he clear and prejudicial purpose was to induce the jury into believing that such low cost benefits were an element of plaintiff's right to recover...."). Accord Demers v. Snyder, 282 N.J.Super. 50, 58, 659 A.2d 495 (App.Div.1995). Cf. Weiss v. Goldfarb, 154 N.J. 468, 480, 713 A.2d 427 (1998) (in holding that ultimate outcome charge instructing the jury of Charitable Immunity Act cap on hospital's liability in a medical malpractice action should not be given, the Court reaffirmed the view held "for more than three-quarters of this century" that "whether a monetary verdict is collectable or a defendant has insurance is irrelevant to the jury"); Roman v. Mitchell, 82 N.J. 336, 348, 413 A.2d 322 (1980) (absent special circumstances, jurors ordinarily should not be asked specific questions as to stockholding or employment in an insurance company because, though most jurors know of the existence of insurance coverage in most automobile injury cases, such questions "tend to emphasize unduly the fact of insurance coverage ... [t]he risk is that, if permitted, such questions could be used ... to stress the fact of insurance coverage to the jury. ").
We acknowledge that "[p]erhaps the risk of ... prejudice emanating from references to insurance has been diminished with the advent of compulsory automobile insurance. In these days, the juror who is neither an automobile owner or operator is a rarity." Krohn v. New Jersey Full Insurance Underwriters Assoc., supra, 316 N.J.Super. at 481, 720 A.2d 640. Mere mention, therefore, of insurance is not, in all cases, prejudicial error. See Bendar v. Rosen, 247 N.J.Super. 219, 236, 588 A.2d 1264 (App.Div.1991); Navarro v. George Koch & Sons, Inc., 211 N.J.Super. 558, 577, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986); Runnacles v. Doddrell, 59 N.J.Super. 363, 369, 157 A.2d 836 (App. Div.1960). Compare Krohn v. New Jersey Full Insurance Underwriters Assoc., supra, 316 N.J.Super. at 483, 720 A.2d 640 (in an underinsured motorist coverage case, counsel's repeated references to plaintiff's payment of an "extra premium" for UIM coverage and the carrier's refusal to pay that coverage was reversible error). See also DeMary v. Rieker, 302 N.J.Super. 208, 217-19, 695 A.2d 294 (App.Div. 1997).
To be sure, in the two-day trial here, there was little or no mention of the fact that *992 plaintiff was seeking recovery for his injuries not from the tortfeasor but from his own carrier because the tortfeasor was not insured, until the very end of the jury instructions. At that point, the judge added the following to the usual damage charge:
One other thing I wanted to point out to you, ladies and gentlemen, I told you when the case started, I wanted also, as we went along, to leave you not only with a clear understanding of how the process works because you're such an intimate part of it, but also that you understand not just the history of this case but the history of cases generally. You may be misled by something here and I think it does no harm to the parties to straighten it out. In fact, Counsel has asked me to bring it up to you.
Your dealing here today with an incident that really occurred in 1992 and here it is 1997, almost 1998. It may leave you with the impression that things are much worse than they really are. It does not take five years, normally, for an issue like this to come before a jury. The history of this case was sort of made more complex by virtue of the fact that we had a Pennsylvania resident who is a Defendant. The case was originally brought in Federal Court. When it turned out that that party had no insurance, that sort of sent the case back to Go. This action was actually only filed in January of this year and the normal, the average length of trial in Somerset County, from the time of the filing of the complaint until the time it is tried, and it's dangerous to talk about averages, but it's about 16 or 17 months. So it's less than two years. We have cases that are three years old, very few of them. Most cases come up for trial; they're about two years old. That's about the time and many of those require two years to prepare them, believe it or not.

[Emphasis added.]
The record does not reflect why this language was included in the charge except that "counsel had asked [the judge] to bring it up [to the jury]." We presume this refers to the age of the litigation. But in the process of explaining why there was a 1997 trial on a
1992 accident, something we are not entirely sure need have been done, the jury was told that the tortfeasor had no insurance and that plaintiff was looking to his own carrier for coverage.
Were this the only reference to that, we might be content to consider it fleeting and, perhaps, harmless. Indeed, there was no objection. But shortly after the jury commenced deliberations, it asked three questions:
Why is Allstate the Defendant?
What is Allstate coverage for?
Are there dollar limitations for the coverage?
Whether or not there was any discussion of the questions or an appropriate response is not reflected by the record. We presume there was, as no objection was offered by either party. In any event, the judge answered the questions in the following fashion:
You've given me a number [of questions] here. I thought I had answered them in the course of the charge. It may have been missed because it was part of the charge. When I was telling you about the history of this matter and why a 1992 accident resulted in a trial in 1997, the originally the Plaintiff made a claim against the driver of the other snowmobile and that's the person who was clearly guilty of negligence. There's no question about that. It turned out that that defendant did not have any insurance. By the time that information was ascertained, a number of years had effectively gone by and Allstate is the insurance carrier that provided uninsured motorist coverage to the Plaintiff. It's the Plaintiff's own carrier for uninsured motorist coverage.
So, since the motorist that caused the accident had no insurance coverage, the Plaintiff made claim against his own company and that answers Questions 1 and 2 on your list.
Question 3 says "Are there dollar limitations for the coverage?" I'm not going to answer that question because that should bear nohave no bearing whatsoever on your deliberations. That's not something you should even consider in your deliberations.

*993 [Emphasis added.]
Thus, while the judge told the jury that the amount of plaintiff's coverage was not for them to consider, he again told them the tortfeasor had no insurance and that plaintiff was seeking recovery from his automobile insurance carrier. But those facts too should have had no bearing upon the verdict. Indeed, telling the jury the coverage limitations were not relevant may well have suggested that the tortfeasor's lack of insurance and the presence of the UM carrier were, in contrast, relevant.
We recognize that the insertion of the UM coverage and the tortfeasor's lack of insurance in the jury instructions does not appear to have been the product of any improper motive or misconduct on the part of counsel and that no objections were raised below. But this is not a "mere reference to insurance" issue. The jury was twice told the culpable tortfeasor was uninsured and that the plaintiff was seeking coverage from his own carrier, and, we think, may well have been led (at the least allowed) to believe that that somehow had some importance to the case.
To what extent this might have prejudiced the outcome, we cannot precisely discern. Most certainly it does not appear to have resulted in a "deep pocket" award. On the other hand, we cannot ignore the fact that the verdict of $15,000 is exactly the minimum liability coverage mandated for automobile insurance under N.J.S.A. 17:28-1.1. Just as we have acknowledged that the average juror is aware of mandated insurance coverage, we think it fair to say the average juror is aware of the mandated liability limits of such coverage. To be sure, the jurors were told that the amount of uninsured motorist coverage the plaintiff might have was not for them to consider. But there is nothing in the instructions that, similarly, told the jurors that the verdict could not reflect the liability coverage they may have thought the tortfeasor should have had. We are not at all confident that the verdict here is not the product of the jury's view that plaintiff ought not be permitted to get any more from his own insurance company than what he could have gotten from the tortfeasor, had the tortfeasor had coverage. In this respect, too, the jury may have had the notion that such coverage should have been available. Simply put, we are hard-pressed to attribute to mere coincidence the fact that the amount of the award to plaintiff is exactly the statutorily mandated liability coverage, particularly in view of the severity of his injuries.
We would be remiss were we not to acknowledge Annunziata v. Prudential Ins. Co., 260 N.J.Super. 210, 215-16, 615 A.2d 686 (Law Div.1992). The sole issue before the court in Annunziata was whether plaintiff insured had a right to a jury trial on her underinsured motorist claim against her carrier after rejecting an arbitration award. The court concluded that she did, based upon the language of her UIM policy. In doing so, the trial judge rejected defendant carrier's claim that it would be prejudicial if the jury were made aware that an insurance company was the defendant. The judge stated: "[t]his court finds defendant's arguments to be without merit due to the fact that the defendant has provided no proof to this court that a jury will be unduly prejudiced against it because it is an insurance company." Id. at 215, 615 A.2d 686. The judge also concluded that former Evid. R. 54 (now N.J.R.E. 411) did not apply since the carrier was a first-party defendant, observing that the former rule was intended to prevent a jury considering the existence, or lack thereof, of a party's insurance coverage on the issue of negligence or wrongdoing where the carrier was not a first-party defendant. Id. at 215-16, 615 A.2d 686.
The comments in Annunziata concerning the prejudicial impact of the existence of insurance in a jury trial in a UIM or UM coverage case are dicta. The conclusion that plaintiff there was entitled to a jury trial on her underinsured coverage claim was premised entirely upon the contractual nature of such claim and the language of the policy. Whether, as such a trial may unfold, the existence of the insurance coverage or the lack of insurance on the part of the tortfeasor, and/or the defendant's role as the carrier creates reversible prejudice must depend upon the particular circumstances of each trial. Certainly the potential for such prejudice exists, regardless of the fact that the insurance company is a direct party defendant. We reject any reading of Annunziata as holding that the existence of insurance *994 coverage, or lack thereof, and/or the nature of the coverage action may be disclosed to a jury in a UM or UIM damages trial without careful consideration of the potential prejudice and without such protective measures and/or limiting instructions to the jury as the circumstances may require.
Reversed and remanded for a new trial consistent with this opinion. We assume that the jury will not be told of the underlying insurance aspects of the case and suggest that either the Allstate be addressed to the jury as "the defendant" without further description or that the tortfeasor's name might be substituted in place of Allstate. At the very least, the jury should not be told that the tortfeasor has no insurance. Moreover, if the jury is informed that the action is a suit against plaintiff's own carrier, a fact we are not sure it need be told, the jury must be instructed that that fact has no relevancy on the issue of damages and that the value of those damages must be measured by the evidence of those damages presented during the trial, unaffected by the fact that plaintiff seeks recovery from his insurer.