971 A.2d 1062

JOHN BARDIS AND HELEN BARDIS, HIS WIFE, PLAINTIFFS–
APPELLANTS, v. FIRST TRENTON INSURANCE CO.,
DEFENDANT–RESPONDENT.

Argued November 17, 2008—Decided June 10, 2009.

*David T. Wheaton,* argued the cause for appellants (*Levinson Axelrod,* attorneys; *Mr. Wheaton* and *Matthew P. Pietrowski,* on the briefs).

*Stephen A. Rudolph,* argued the cause for respondent (*Monte & Rudolph,* attorneys; *Michael J. Lynch,* on the brief).

*Bruce H. Stern,* submitted a brief on behalf of *amicus curiae* Association of Trial Lawyers of America–New Jersey (*Stark & Stark,* attorneys).

Justice HOENS delivered the opinion of the Court.

In this matter, we are called upon to answer three questions. First, we address whether, in a jury trial arising out of Underinsured Motorist (UIM) coverage, the insurer should be identified as the defendant. Second, we consider whether, in the UIM trial, evidence that the insurer authorized payment of Personal Injury Protection (PIP) benefits is relevant to whether there is a causal connection between the accident and the claimed injuries. Third, we focus on whether, in the unusual circumstances of this dispute, the UIM carrier's disavowal of knowledge of the source of payments for the medical treatment of plaintiff's injuries deprived plaintiff of a fair trial.

We first conclude that there are strong reasons supporting the rule that the UIM litigation proceed in the name of the tortfeasor rather than the insurer, that these reasons ordinarily militate in favor of identifying the defendant in the trial by using the name of that tortfeasor, and that the decision to identify the UIM insurer as the defendant instead remains a matter left to the sound discretion of the trial judge should circumstances dictate. Applying that reasoning, we will not disturb the trial court's decision to preclude plaintiff from identifying the UIM carrier as the defendant at trial in this matter.

Second, we conclude that payment of PIP benefits for treatment of an injury is irrelevant to the question of causation of that injury. We further conclude that admitting evidence of PIP benefits to infer a causal relationship would be antithetical to the purposes of PIP, namely, the prompt payment for medical care rendered after an accident. We therefore agree with the Appellate Division's analysis that the trial court's decision to admit evidence of PIP payments was in error.

Third, however, the trial court's error in admitting evidence of PIP payments led to the use of a stipulation identifying an employee of the insurer as having authorized those payments, and to the closing argument by counsel disavowing both his own and the actual tortfeasor's knowledge about that employee and her

decisions. Because under the circumstances, that argument had the capacity to confuse the jury, we disagree with the appellate panel's view that it amounted to harmless error. We therefore reverse the verdict and remand for a new trial at which the UIM carrier will not be identified as the defendant and in which evidence of PIP payments shall be excluded.

## I.

This appeal arises in the context of a UIM claim following an automobile accident. On February 13, 1997, plaintiff John Bardis was injured when his automobile was involved in a three-car accident caused when a vehicle driven by Joseph Bologna hit the vehicle behind plaintiff's, pushing it forward. At the time of the accident, plaintiff was insured by defendant First Trenton Insurance Company.

The dispute is complicated by the fact that the February 1997 incident was neither plaintiff's first, nor his last, automobile accident. Although we need not detail the proofs at trial, all of which are explained in the Appellate Division's published decision, see *Bardis v. First Trenton Ins. Co.*, 397 *N.J.Super.* 138, 142–47, 936 A.2d 476 (App.Div.2007), it is noteworthy that at the time of the February 1997 accident, plaintiff had degenerative disc disease and a significant history of neck, back, and shoulder complaints and treatments.

Plaintiff did not seek any treatment immediately following the accident, but instead went to work at the diner he owns and to which he was headed when the accident occurred. The next day he went to the emergency room, complaining of neck, back, shoulder, and knee pain. In the months that followed, both x-ray and MRI studies were performed that disclosed certain injuries to his neck, back, and shoulder, as well as pre-existing and degenerative conditions of his neck and back.

Plaintiff was in two subsequent motor vehicle accidents, a head-on collision in September 1997 and an accident in 1999, the specifics of which plaintiff could not recall. The particulars of

those events are not important; the relevance of each was that there was a continuing series of MRI and other studies and treatment performed on plaintiff, which formed much of the basis for the dispute at trial.

There was no question that Bologna was the cause of the February 1997 accident, and plaintiff settled with him for the full extent of his $15,000 insurance policy. There was also no question raised by First Trenton about the medical treatments that plaintiff underwent after the February 1997 accident, all of which were covered under the PIP provisions of his insurance policy. Nor did First Trenton decline to cover, as part of plaintiff's PIP benefits, the cost of back surgery performed on plaintiff in 2003. It is that surgery, however, that has become the focal point of the dispute between the parties in this appeal.

Plaintiff asserts that the surgery performed in 2003 was causally related to the February 1997 accident. First Trenton, at the UIM trial, contended that in fact it was not, but that it was caused either by continued degenerative processes that preceded the accident or by one of the subsequent accidents in which plaintiff was involved. Both sides presented significant expert testimony on the question of causation of the plaintiff's various injuries, all of which related, of course, to his claim for noneconomic damages in the context of his UIM coverage claim.

The three discrete issues that confront this Court arose because of two applications plaintiff made to the court prior to or during the trial. First, he requested that the judge advise the jury that First Trenton, his insurer, was the defendant rather than referring to Bologna, the tortfeasor, as if he were the defendant. The trial judge denied that application based on the guidance he derived from appellate level precedents and consistent with his prior experience in conducting UIM trials.

Second, plaintiff asked for permission to call and question Susan Wetherell, a First Trenton employee, about her review of the PIP claims and the basis on which she had authorized their payment. As part of that application, plaintiff asserted that because the

dispute in the UIM trial depended on which injuries were causally related to the February 1997 accident, Wetherell's evaluation of his claims and her authorization of the payment of PIP benefits to pay for his medical treatment was probative of causation. Over defendant's strong objections about both the relevance of PIP payments and Wetherell's qualifications to testify about causation, the trial court granted that request.

However, as a result of that ruling, the parties stipulated to the substance of the testimony that Wetherell would have given in place of her appearance at trial as a witness, referring to her by name and describing her as a "representative of the defendant." Counsel for First Trenton, who the jury had been told represented the tortfeasor Bologna, then commented in closing that neither he nor Bologna knew Wetherell and questioned whether her decision to pay for treatment of the injuries was relevant to causation.

After the jury returned its verdict in favor of defendant, plaintiff appealed. In its published opinion, the Appellate Division first expressed its view that "under the circumstances it would have been better to tell the jury, subject to an appropriate instruction, that the carrier was the defendant," but concluded that the trial court's contrary decision was an appropriate exercise of discretion. *Id.* at 151, 936 *A.*2d 476. The panel concluded that the trial judge had erred in permitting evidence of PIP payments, both because those payments were not relevant and because Wetherell was not competent to testify about causation of the injuries. *Id.* at 152–54, 936 *A.*2d 476. Although critical of the closing argument by defense counsel essentially disavowing knowledge of those payments, the panel reasoned that because the stipulation was inadmissible, those comments did not deprive plaintiff of a fair trial. *Id.* at 155, 936 *A.*2d 476. The panel therefore affirmed the verdict in defendant's favor.

We granted certification, 194 *N.J.* 444, 945 *A.*2d 1288 (2008), and we thereafter granted amicus status to the Association of Trial Lawyers of America–New Jersey (ATLA–NJ).

## II.

The contentions of the parties and amicus may be summarized briefly. Plaintiff urges us to adopt a rule that requires that the insurer in a UIM trial be identified as the defendant, describing the current practice as "hiding the identity of ... the real defendant." He argues that we should embrace the logic of the Appellate Division in *Krohn v. New Jersey Full Insurance Underwriters Association*, to the effect "[s]o long as the insurance is not featured or made the basis at the trial for an appeal to increase or decrease the damages, the information would seem to be without prejudice." 316 *N.J.Super.* 477, 482, 720 *A.*2d 640 (App.Div.1998), *certif. denied*, 158 *N.J.* 74, 726 *A.*2d 937 (1999). He argues that any risk of prejudice can be neutralized with limiting instructions explaining that a defendant's identity as an insurance company is irrelevant to the issue of damages. He asserts that this case is a perfect example of the genuine risk of confusion, pointing out that defendant's improper disavowal of its stipulation would not have happened had the jury been so advised.

Second, plaintiff argues that counsel's summation comments were "highly prejudicial because [they] made it appear that [plaintiff] was hiding something" or "trying to pull a fast one over on [the jury]." He argues that defendant should not have been allowed to enter into the stipulation to prevent Wetherell's appearance as a witness and then repudiate the stipulation at trial. He urges us to reject the Appellate Division's focus on the inadmissibility of the PIP evidence and consider the effect of the summation on the jury's evaluation of the evidence.

Third, plaintiff argues that the Appellate Division erred in its conclusion that the stipulation about PIP payments should have been excluded at trial. Plaintiff urges us to conclude that the stipulation was relevant to the question of whether the injuries were causally related to the accident, that it was not an impermissible medical opinion of a lay witness, and that the Appellate Division's policy rationale for excluding PIP payment evidence was unfounded.

First Trenton argues that the trial court properly exercised its discretion in declining to identify it as the defendant at trial. First Trenton cites *Krohn* for the proposition that, "[a]s a general rule, the probative value of information regarding whether a person is insured or not is substantially outweighed by the potential for undue prejudice" based upon the perceived "deep pockets" of the insurance company. *Id.* at 481–82, 720 *A.2d* 640.

Second, First Trenton argues that the Appellate Division properly rejected plaintiff's contentions regarding the stipulation, asserting that those arguments are moot because the jury returned a verdict of no cause in spite of the trial court's improper ruling about the admissibility of PIP payments that led to the stipulation. As part of its analysis, First Trenton contends that if evidence of an insurer's payment of medical expenses is admissible, there will be a "rippling and chilling effect of making all PIP insurers fight, dispute and litigate all PIP bills," contrary to the intent of the legislative scheme.

With regard to the closing argument, First Trenton urges us to agree with the Appellate Division that the comments were true because the defendant—meaning Bologna—did not know Wetherell and played no part in determining whether to pay medical bills. Asserting that its argument did no more than explain to the jury that they could, but were not obligated to, accept the stipulation as true, First Trenton urges us to agree with the appellate panel that there was no error.

Amicus ATLA–NJ addressed only the issue of whether to identify the insurer or the tortfeasor as the defendant at trial. It argues that the trial court created a fiction by failing to advise the jury that First Trenton was the defendant and urges us to compel courts to identify the insurer as the defendant in UIM trials, albeit with limiting instructions. Describing the practice followed by the trial court as "unfair and prejudicial to both parties," it asks us to adopt a new rule.

## III.

Although we ordinarily identify the real parties in interest in any litigation, and although First Trenton was appropriately named in the UIM complaint as the defendant, that does not answer the question posed by plaintiff about whether the insurer should be identified in the UIM trial by its own name. In other circumstances, we have expressed our concern that references to insurance coverage might distract jurors from a fair evaluation of the evidence. *See Roman v. Mitchell,* 82 *N.J.* 336, 347–48, 413 *A.*2d 322 (1980) (commenting on risk that voir dire questions might create inappropriate focus on insurance). Our Appellate Division has likewise recognized that references to insurance might motivate an award of damages based on a jury's perception of an insurer as having "deep pockets." *Krohn, supra,* 316 *N.J.Super.* at 482, 720 *A.*2d 640.

■ Similar concerns are voiced in our *Rules of Evidence.* *N.J.R.E.* 411, for example, provides that "[e]vidence that a person was or was not insured against liability is not admissible on the issue of that person's negligence or other wrongful conduct." The theory that supports that *Rule* is not a concern that jurors will equate insurance with an insured individual's lack of due care, but instead "that if jurors know that an insurance company will be paying a judgment, they [the jurors] might be reckless in awarding damages to a plaintiff." Biunno, *Current N.J. Rules of Evidence,* comment on *N.J.R.E.* 411 (2008). Not only are these matters of concern when the tortfeasor is the defendant, but they are relevant as well in the UIM context.

■ In point of fact, the UIM claim is a contractual one, arising out of the insurance policy issued to plaintiff by his own insurer. *See Zirger v. Gen. Accident Ins. Co.,* 144 *N.J.* 327, 333, 676 *A.*2d 1065 (1996); *Krohn, supra,* 316 *N.J.Super.* at 483, 720 *A.*2d 640. The claim, however, has little to do with the contract of insurance and everything to do with the accident in which plaintiff was involved. It is only the happenstance of the tortfeasor's minimal

coverage as compared with plaintiff's injuries that brings plain-
tiff's insurer, with its more generous UIM coverage, into the
courtroom. In reality, it is the accident and the driver who caused
it, rather than the insurer from which plaintiff now seeks a
recovery for noneconomic damages, that is in any way relevant to
the issues to be decided.

In a sense, the claim against the insurer is a derivative
one; the sole focus is on whether the injuries, and the medical
treatment that followed, were caused by the accident and, there-
fore, whether plaintiff is entitled to a verdict to compensate him or
her for noneconomic damages that resulted. None of those facts
has any connection to the insurer; they have only to do with the
accident, the treatments, and the opinions of the doctors that bear
on the question of a causal relationship. Indeed, in a UIM trial, a
judgment against the UIM carrier can only be entered if a
noneconomic damage award is returned that exceeds the coverage
available from the tortfeasor's insurance. Seen in that light, the
identity of the insurer is entirely irrelevant to any issue in the
proceeding.

Nor is it accurate to say, as does plaintiff, that the trial court's
decision to shield the insurer's identity created confusion in the
trial. On the contrary, the confusion in the trial was caused by
the confluence of the erroneous decision that PIP payments were
relevant to the question of causation of the claimed injuries, and
the closing arguments in which counsel for defendant sought to
disavow knowledge of the decision-making process that led to
those payments. Had the trial proceeded in the ordinary fashion
of a UIM claim, in which the claimed injuries and their causal
relationship, if any, to the accident were the focus, there would
have been no need to identify the insurer at all.

In considering the issues on appeal, the Appellate Division
commented that it "questioned the wisdom" of our general rule
about not identifying the insurer in a UIM trial as the defendant.
*Bardis, supra,* 397 *N.J.Super.* at 151 n. 3, 936 *A.2d* 476. Although
the panel opined that a contrary rule would be preferable, if

coupled with an appropriate instruction that the defendant's identity is irrelevant, *see Wenz v. Allstate Ins. Co.*, 316 *N.J.Super.* 570, 580, 720 *A.*2d 989 (App.Div.1998), we disagree. In the context of a UIM claim, in which the identity of the insurer is not relevant to any issue, and in which the jury's decision must focus on the behavior of the actual tortfeasor, the rule advanced by plaintiff and the amicus carries the greater risk of confusion. That rule would increase the risk of jury confusion because the jury would first be told that the defendant is an insurer, but would then be advised that this is irrelevant and should play no role in their evaluation of the claim. That rule, by injecting an entirely irrelevant fact into the trial, creates a risk that far outweighs the remote possibility that the jury might be confused if they are not so advised. Contrary to the view expressed by our concurring colleague, this rule is not designed "to hide ... the fact that the case [is] about insurance coverage," *post* at 283, 971 *A.*2d at 1073, because in a UIM trial it is the judge who decides the coverage question when molding the verdict to account for the tortfeasor's coverage. Nor is it an effort to "feed[ ] fictions to the jury" or to protect insurers. *Post* at 282, 971 *A.*2d at 1072. Rather, the rule is intended only to protect the integrity of the factfinding process by leaving wholly irrelevant considerations aside.

 Notwithstanding that view, our decision is a narrow one; we reject the request for a rule compelling the insurer in a UIM trial to be identified as the defendant, and we disagree with the panel's suggestion that such a rule would be preferable. Instead, in the context of a UIM trial, in which the circumstances of the underlying accident are the focus, we are persuaded that the insurer's identity is ordinarily irrelevant. Nonetheless, we leave it to the sound discretion of the trial judge to conclude, and to act accordingly, if circumstances in a particular trial suggest otherwise.

## IV.

 We turn, then, to the dispute between the parties concerning the relevance, if any, in a UIM trial, of the carrier's payment

of PIP benefits for injuries claimed to have been caused by the accident. By statute, our Legislature has required that "every standard automobile liability insurance policy ... contain personal injury protection [PIP] benefits for the payment of benefits without regard to negligence, liability or fault of any kind." *N.J.S.A.* 39:6A–4.

We have previously held that this statute advances an important legislative goal of ensuring that persons injured in automobile accidents will receive medical care and that the bills for that care will be promptly paid. *Caviglia v. Royal Tours of Am.*, 178 *N.J.* 460, 467, 842 *A.*2d 125 (2004) (recognizing, as primary among Legislature's goals, "providing benefits promptly and efficiently to all accident injury victims"); *see also Johnson v. Scaccetti*, 192 *N.J.* 256, 269, 927 *A.*2d 1269 (2007) (noting that "the primary aim of the various no-fault statutory schemes has been to achieve lower premiums and prompt payment of medical expenses" (citation and internal quotation marks omitted)); *DiProspero v. Penn*, 183 *N.J.* 477, 485, 874 *A.*2d 1039 (2005) (acknowledging the importance of our "system of first-party self-insurance ... [for] provid[ing] an automobile accident victim prompt payment of out-of-pocket medical expenses" (citation and internal quotation marks omitted)); *Aponte–Correa v. Allstate Ins. Co.*, 162 *N.J.* 318, 323–24, 744 *A.*2d 175 (2000) (recognizing that primary goal of statute was to "assure that injured plaintiffs are compensated promptly").

In order to achieve this important goal, we have understood the PIP statute to afford the "broadest possible coverage." *Palisades Safety & Ins. Ass'n v. Bastien*, 175 *N.J.* 144, 148, 814 *A.*2d 619 (2003) (quoting *Svenson v. Nat'l Consumer Ins. Co.*, 322 *N.J.Super.* 410, 416, 731 *A.*2d 91 (App.Div.1999)); *see Bowe v. N.J. Mfrs. Ins. Co.*, 367 *N.J.Super.* 128, 139, 842 *A.*2d 247 (App.Div.2004) (acknowledging Legislature's intent "to provide PIP claimants the broadest possible coverage").

The Legislature has also enacted a statute that makes evidence of amounts paid or collectible pursuant to PIP inadmissible in an ordinary suit for damages arising from an automobile

accident. *See N.J.S.A.* 39:6A–12. As we have noted, the principal goal of that statute is to avoid double recovery for a loss. *See Cirelli v. Ohio Cas. Ins. Co.,* 72 N.J. 380, 387, 371 A.2d 17 (1977) (noting statutory objective to ensure that "injured person who was the beneficiary of the PIP payments could not and should not recover from the tortfeasor the medical, hospital and other losses for which he had already been reimbursed"). We have also identified easing court congestion and lowering automobile insurance costs as the ancillary goals served by the statute. *Roig v. Kelsey,* 135 N.J. 500, 513, 641 A.2d 248 (1994). Although the Legislature has not extended that prohibition to UIM suits, the underlying logic still pertains.

■ A UIM action is essentially a contract-based substitute for a tort action against the tortfeasor. *Krohn, supra,* 316 N.J.Super. at 483, 720 A.2d 640 (stressing that UIM cases are tried in manner of third-party tort actions). The same is true of uninsured motorist (UM) coverage claims as well. *Midland Ins. Co. v. Colatrella,* 102 N.J. 612, 617, 510 A.2d 30 (1986) ("In effect, an uninsured motorist provision is a contractual substitute for a tort action against an uninsured motorist."). In theory, then, there should be no different application of the rules governing liability in a UIM case than those that apply in the trial of an ordinary tort action arising from a motor vehicle accident. *See Stabile v. N.J. Mfrs. Ins. Co.,* 263 N.J.Super. 434, 441, 623 A.2d 252 (App.Div. 1993).

■ As our Appellate Division has observed, "whether [the tortfeasor's] inadequacy is no insurance at all or underinsurance has no conceptual consequence" because "[i]n both instances, the insured victim's recovery is . . . a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance." *Ibid.; see Montedoro v. City of Asbury Park,* 174 N.J.Super. 305, 308–09, 416 A.2d 433 (App.Div. 1980) (noting that in UM context, "[t]he insured's legal entitlement to damages for the uninsured driver's negligence imports into the UM policy all of the normal rules governing tort liability and

damages"). Therefore, the prohibition on admissibility of PIP payments should apply regardless of whether the tortfeasor or the plaintiff's own insurer is defending against the claim.

There are two reasons why this is so. First, there is nothing in the decision to pay a PIP claim that is probative of causation. For one thing, as this matter well illustrates, the individual charged by the insurer with deciding whether to authorize payment for medical care is ill-equipped to make a decision on causation; he or she simply lacks the expertise needed to decide that the medical treatment was caused by one accident rather than another about which the employee may not even be aware. That is, the defense at trial, that the injury was actually caused by a later event, may be unknown to the employee making the PIP decision; it may only be discovered after litigation is in progress.

■ Second, there are strong reasons why evidence relating to PIP payments should be excluded from a UIM trial that go beyond preventing a double recovery. Because the goal of the PIP system is to ensure both prompt medical care and prompt payment of those who provide that care, *see Caviglia, supra,* 178 *N.J.* at 467, 842 *A.*2d 125, any collateral impact of the decision to make a PIP payment must be carefully evaluated and circumscribed. That is to say, the insurer that pays PIP claims in the ordinary course should do so safe in the knowledge that the evidence of that payment will not be admissible in the event that there is a civil suit, in order to avoid creating an incentive to decline payment. By ensuring that the fact of a payment is inadmissible at trial, the insurer has every incentive to make payments and to do so by using a rather broad interpretation of the relationship between the claimed treatment and the underlying motor vehicle accident. In the end, even if the causal relationship is weak, the insurer, knowing its obligations, more likely will pay the claim because the risk of an inappropriate denial outweighs any other possible result of that choice.

If we were to agree with plaintiff and hold that the fact of a PIP payment is relevant to the question of the causal connection

between a claimed injury and an accident, we would create a strong disincentive to the insurer faced with a claim for payment. The insurer, knowing that its decision to make a payment on a PIP claim might later be admissible in evidence on the question of whether the accident was causally related to the injury for which the PIP-authorized treatment was rendered, might well decline payment. At a minimum, the process of deciding whether to make a PIP payment will become more complex as decisions are made, inevitably, with the possibility of the collateral use of the payment decision in mind. The costs of insurance will rise, as additional layers of more sophisticated reviewers and decision makers become involved in the process, all out of a concern that the payment will become evidence of a far different question, namely, causation. It would not serve the larger legislative goal of creating a simple and expeditious method for treatment and for prompt payment if we were to conclude that the decision to pay for any particular treatment might later be used against the insurer in litigation. We therefore decline to do so, and we agree with the Appellate Division that the trial court erred in deeming the PIP payments admissible.

## V.

Although we therefore conclude that the PIP payments were irrelevant to any of the issues that were before the jury in this UIM trial, we cannot avoid the implications that flowed from the trial court's contrary decision. The insurer, faced with the adverse ruling and being required to present its employee who had authorized the PIP payments to testify, entered into a stipulation that the bills had been paid. That stipulation identified Susan Wetherell, who otherwise would have been required to appear and testify, described her as a representative of defendant, and advised the jury that all of the bills for medical treatment for the injuries that were in dispute had been paid.

In that context, the closing argument to the effect that defendant, and the attorney, had no idea who Wetherell was and

why she had elected to make the payments for the medical bills may well have confused the jury. The stratagem inappropriately sought to undo the trial court's ruling about the relevance of those payments. Although the decision to admit the PIP payments into evidence was error, we cannot have any confidence that the summation to the effect that the payments and their source were unknown to defendant did not cause the jury to reach an unjust result. We are therefore constrained to reverse the verdict in defendant's favor and to remand this matter for a new trial in which the evidence of PIP payments shall be inadmissible.

## VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for proceedings consistent with this opinion.

Justice ALBIN, concurring.

In this case, plaintiffs sued their underinsured motorist (UIM) coverage carrier, First Trenton Insurance Co. (First Trenton), for uncompensated damages from an automobile accident caused by Joseph Bologna. With the trial court's approval, the attorney defending First Trenton misrepresented to the jury that his client was the tortfeasor, Bologna, and not the insurance company. That deception, echoed by the trial court, was intended to hide from the jury the fact that the case was about insurance coverage. The majority now holds that the deception that occurred in this case is a permissible approach—a necessary evil—to ensure an insurance company a fair trial.

Whether in a UIM case or any other insurance coverage case, I believe that the jury can handle the truth, that the jury can be trusted to be fair to the true parties in interest, and that feeding fictions to the jury is an unacceptable way to run a transparent court system. I also believe that a properly instructed jury—even in an insurance coverage case—is capable of rendering a fair verdict. In courtrooms throughout this State, juries hear sensa-

tional cases widely reported in the press, sometimes involving notorious defendants or plaintiffs, but we have faith that carefully selected jurors given proper legal guidance will do justice. I see no reason to depart from that paradigm for an insurance company in a UIM coverage case.

I concur with the majority that this case must be remanded for a new trial, but in my opinion the primary error—the one that set the stage for the other missteps identified by the majority—was allowing First Trenton's attorney to falsely claim that he represented Bologna, who apparently had no clue that his name had been misappropriated for the benefit of the insurance company.

Significantly, the Appellate Division questioned the "wisdom of not telling the jury the truth about who the defendant is." *Bardis v. First Trenton Ins. Co.*, 397 *N.J.Super.* 138, 151 n. 3, 936 *A.*2d 476 (App.Div.2007). Here, the trial judge instructed the jury that Bologna was the defendant, *id.* at 147, 936 *A.*2d 476, when, in truth, First Trenton was the defendant. The appellate panel was uneasy with the patronizing approach taken with the jury. The panel noted that "[j]udges routinely instruct jurors to disregard testimony improperly admitted or other inappropriate behavior that occurs during a trial," and that the jury is presumed to follow the limiting instructions. *Id.* at 151 n. 3, 936 *A.*2d 476. Indeed, the panel "perceive[d] no difference between those circumstances," and those in which a "plaintiff has instituted a lawsuit against its own insurance carrier" and the jury is instructed that the insurance company's status as a party " 'has no relevancy on the issue of damages.' " *Id.* at 151 & n. 3, 936 *A.*2d 476 (quoting *Wenz v. Allstate Ins. Co.*, 316 *N.J.Super.* 570, 580, 720 *A.*2d 989 (App.Div. 1998)).

It bears repeating that in a multitude of instances, such as where other-crime evidence is introduced at trial, *see N.J.R.E.* 404(b), we depend on limiting instructions to avert any prejudice that might flow from the improper use of such information by the jury. *See N.J.R.E.* 105 ("[T]he judge, upon request, shall restrict the evidence to its proper scope and shall instruct the jury

accordingly, but may permit a party to waive a limiting instruction."). In an insurance coverage case, as in *Wenz,* the jury is told that the value of the damages must be determined based on the evidence "unaffected by the fact that plaintiff seeks recovery from his insurer." *Wenz, supra,* 316 *N.J.Super.* at 580, 720 *A.2d* 989. In such cases, the presumption that the jury follows the trial court's instructions is "[o]ne of the foundations of our jury system." *State v. Burns,* 192 *N.J.* 312, 335, 929 *A.2d* 1041 (2007).

I do not understand the purpose of having a special carve-out from our judicial policy of transparency in UIM coverage cases. After all, the complaint is a public record available for inspection in the courthouse, *see R.* 1:38, and from a review of the complaint anyone would be able to identify the true parties and the nature of the claim, *see R.* 4:5–1 and –2. Moreover, once our jurisprudence permits a judge to lie to the jury to avoid the necessity of giving a limiting instruction to cabin in potentially prejudicial information, where will the law of unintended consequences take us? Will a fast-food giant argue that it should be allowed to take the pseudonym of Joe's Cafe so the jury will not be swayed that a deep pocket can be tapped? Will a defendant charged with committing a sensational crime contend that he should be allowed to cloak himself with a fictitious identity to ensure a fair trial?

Other jurisdictions that have considered similar issues have rejected the approach taken by the majority. *See, e.g., Lamz v. Geico Gen. Ins. Co.,* 803 *So.2d* 593, 595–96 (Fla.2001) ("[W]hen the uninsured or underinsured motorist carrier is properly named as a party defendant, it must be identified as such. We have made it clear that the jury should know who the parties are, and in this case, the jury was not fully apprised of Geico's specific party status. This was reversible error."); *Earle v. Cobb,* 156 *S.W.3d* 257, 260 (Ky.2004) ("Kentucky is not alone in recognizing the right of a plaintiff to bring a contract claim against his or her UIM carrier and have that UIM carrier identified as such at trial."); *Tucker v. McQuery,* 107 *Ohio Misc.2d* 38, 42, 736 *N.E.2d* 574 (1999) ("[J]urors have the right to know who the real party in

interest is. In the case of automobile accidents, there is almost invariably an insurance company involved."); *Lima v. Chambers,* 657 *P.*2d 279, 285 (Utah 1982) ("The identity of the intervening insurance company should be made known to the jury. . . ."); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady,* 197 *W.Va.* 107, 475 *S.E.*2d 107, 113 (1996) (recognizing case law holdings in other jurisdictions that "the jury is entitled to be aware of the uninsured carrier's identity").

In closing, I would hold that the jury in a UIM coverage case, as in every other case, is entitled to know who the true parties are to the action. Here, the initial misrepresentation to the jury, which was responsible for the cascading mistakes that followed, proves the old adage: "Oh, what a tangled web we weave, / When first we practice to deceive!" Sir Walter Scott, *Marmion,* canto I, intro., st. 17 (1808), *quoted in Bartlett's Familiar Quotations* 378 (John Bartlett & Justin Kaplan eds., 16th ed. 1992).

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.