**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3382-16T4

JO ANN CATELLO ONELLO,

     Plaintiff-Appellant,

v.

ULYSSES ISA and STATE
FARM FIRE AND CASUALTY
COMPANY,

     Defendants-Respondents,

and

JOHANNA VELAZQUEZ,

     Defendant.

_____

Argued December 11, 2018 – Decided January 10, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2556-14.

Natalie A. Zammitti Shaw argued the cause for appellant (Law Offices Rosemarie Arnold, attorneys; Natalie A. Zammitti Shaw, on the briefs).

Caesar D. Brazza argued the cause for respondent Ulysses Isa (Sponder & Sellitti, attorneys; Caesar D. Brazza, on the brief).

Carl A. Mazzie argued the cause for respondent State Farm Fire and Casualty Company (Foster & Mazzie, LLC, attorneys; Carl A. Mazzie and Jennifer Sanyshyn, on the brief).

PER CURIAM

Plaintiff Jo Ann Catello Onello appeals from a March 31, 2017 order dismissing the complaint with prejudice following a jury verdict of no cause of action, and a February 23, 2017 oral ruling barring Dr. Mark Berman from testifying at trial. We affirm.

On May 18, 2012, plaintiff and defendant Ulysses Isa were involved in a motor vehicle accident when a vehicle owned by defendant Johanna Velasquez and operated by Isa rear-ended plaintiff's vehicle while she was stopped in traffic. Plaintiff declined medical treatment at the scene and was driven home by her son. She later went to Valley Hospital, where she was treated in the Emergency Department and released.

Plaintiff continued to be treated for her injuries and submitted medical bills to her own automobile insurance carrier, State Farm Fire and Casualty Company (State Farm), to obtain personal injury protection (PIP) benefits. On

October 15, 2012, State Farm obtained an independent medical examination (IME) from Dr. Mark Berman, an orthopedic surgeon, for purposes of determining eligibility for PIP benefits. Dr. Berman opined plaintiff suffered bilateral contusions to her knees, a possible medial meniscus tear to her left knee, a left shoulder contusion with labral tear and rotator cuff tendonitis, and an acute cervical sprain. In his report, Dr. Berman stated the injuries to the left shoulder, cervical spine, right hip, and bilateral knees were causally related to the accident. Dr. Berman further opined the bilateral knee contusions and acute cervical sprain had resolved and that plaintiff had a pre-existing history of fibromyalgia. He noted plaintiff had suffered an elbow injury in the past and had a history of migraine headaches that were both unrelated to the accident. Dr. Berman was not involved in plaintiff's treatment.

Plaintiff, an attorney, filed a pro se complaint against Isa and Velazquez on March 17, 2014, alleging defendants were negligent. Thereafter, plaintiff retained counsel to represent her. Counsel filed an amended complaint on March 16, 2015. The amended complaint added State Farm as a defendant, and asserted claims for underinsured motorist (UIM) coverage under a policy issued to plaintiff by State Farm.

A-3382-16T4

Plaintiff claimed the accident proximately caused left shoulder (torn rotator cuff and biceps tendon), left knee (torn medial and lateral meniscus), cervical (disc herniation at several levels), left elbow, right knee, and right hip injuries. Plaintiff underwent three cervical fusion surgeries, two left shoulder surgeries, and a left knee surgery.

The parties conducted discovery. Plaintiff provided answers to Form A and Supplemental Interrogatories and a series of amendments thereto. In response to question seventeen, plaintiff stated:

> We will be calling all parties to the action, their agents, servants, employees, all treating physicians, radiologists, X-rays, physical therapists . . . within the Answers to Interrogatories and depositions together with -- with any and all persons who shall be revealed by continuing discovery and investigation in this matter.

At no time during the course of discovery did plaintiff amend her answers to interrogatories to name Dr. Berman as an expert witness. State Farm did not retain Dr. Berman as an expert in this case and did not identify him as an expert witness.

In a February 18, 2016 letter, defense counsel forwarded the State Farm PIP file to plaintiff's counsel, which included Dr. Berman's IME report. The letter stated defendant's answers to interrogatories were to be deemed amended

to the extent that defendant reserved the right to call as witnesses at trial any of the medical providers named in the PIP file.

Summary judgment as to liability was granted to plaintiff. Therefore, the trial was limited to damages, with proximate causation being the predominate issue. Plaintiff was subject to the limitation on lawsuit option. Causation was contested because plaintiff had been treated for some of her injuries, particularly those deemed permanent, years prior to the accident.

Plaintiff first gave notice she intended to call Dr. Berman as an expert in her pretrial exchange submitted pursuant to Rule 4:25-7, which requires parties to provide a list of all witnesses, seven days before the first scheduled trial date. Pressler & Verniero, Current N.J. Court Rules, Appendix XXIII to R. 4:25-7(b), www.gannlaw.com (2019). Although this disclosure occurred some five months after the discovery end date, plaintiff notes the pretrial exchange was provided considerably in advance of the actual trial due to trial adjournments unrelated to the late notice.

On the first day of trial, defendants moved to bar the testimony of Dr. Berman because he was not named in discovery as a fact or expert witness. The trial court conducted an N.J.R.E. 104 hearing, and ruled Dr. Berman was barred from testifying. The trial court found that Dr. Berman was not identified as an

expert witness during discovery. The court concluded that allowing Dr. Berman to testify "would be akin to . . . trial by ambush." The court further concluded the fact that Dr. Berman was utilized with regard to PIP benefit determinations "does not automatically somehow make him available . . . as an expert witness without being named" and affording the defense an ability to challenge or depose him during discovery.

The trial court found the decision in <u>Bardis v. First Trenton Ins. Co.</u>, 199 N.J. 265 (2009) analogous, and noted a PIP IME physician should not be dragged into the tort action because of the chilling impact it would have on insurance companies paying PIP and medical bills quickly going forward.

The next day, plaintiff moved for reconsideration. Relying on an unpublished case, plaintiff argued defendants identified Dr. Berman as a possible witness and submitted his IME report. Plaintiff noted that the defense had attached the February 18, 2016 cover letter when it was transmitted the PIP file, which stated: "please be advised that the defendants shall rely upon these documents at the time of trial and the medical care providers identified therein may be called to testify at the time of trial." The court denied reconsideration, concluding Dr. Berman was not a medical provider for the plaintiff and did not

provide any medical treatment to her. The court also noted "Rule 4:17 and the other discovery rules apply to both parties in this matter."

At trial, plaintiff presented the testimony of four experts: Dr. Robert Traflet, a radiologist; Dr. Isa Esformes, an orthopedic surgeon; Dr. John Athas, a radiologist; and Dr. Joshua Rovner, a spinal surgeon. Two of the experts opined as to causation.

Defendants presented evidence in support of their contention that plaintiff's injuries were entirely pre-existing and not proximately caused by the accident. The evidence included a 1997 slip and fall accident causing neck, back, bilateral knee, and bilateral shoulder injuries, resulting in three surgeries. The evidence also included a 2000 slip and fall accident causing neck, back, right knee, and shoulder injuries. Defendants introduced MRI studies performed in 2011, depicting degenerative disc disease throughout plaintiff's cervical spine, and MRI studies performed in 2007, depicting degenerative changes in plaintiff's lumbar spine. Defendants also uncovered evidence that a spinal surgeon had opined plaintiff may need cervical spine surgery long before the accident.

At the conclusion of the nine-day trial the jury issued a unanimous verdict in favor of defendants. This appeal followed.

Plaintiff argues: 1) defendants' oral motion on the first day of trial to exclude Dr. Berman's testimony was untimely; and 2) the trial court committed a manifest abuse of discretion by barring Dr. Berman's testimony without any finding of intent to deceive, surprise, or prejudice. We are unpersuaded by these arguments.

Appellate review of evidentiary rulings of a trial judge is limited. "[A] trial court's evidentiary rulings are 'entitled to deference absent a showing of abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Brown, 170 N.J. 138, 147 (2000) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). Accordingly, "an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Marrero, 148 N.J. at 484).

Rule 4:10-2(d)(1) permits a party through interrogatories to "require any other party to disclose the names and addresses of each person whom the other party expects to call at trial as an expert witness, including a treating physician who is expected to testify . . . ." The experts so disclosed may be deposed as to their opinions. R. 4:10-2(d)(2).

Rule 4:17-7, in turn, requires that amendments to answers to interrogatories at least twenty days prior to the end of the discovery period. Thereafter, amendments may be allowed:

> only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date. In the absence of said certification, the late amendment shall be disregarded by the court and adverse parties.
>
> [R. 4:17-7.]

Defendants propounded interrogatories on plaintiff requiring the disclosure of her experts. Plaintiff did not name Dr. Berman as an expert in her answers to interrogatories or in any amendment to those answers. Plaintiff did not provide a certification of due diligence pursuant to Rule 4:17-7. Nor could she, since plaintiff was aware of the IME performed by Dr. Berman and had possession of his report long before the close of discovery.

By failing to timely amend her answers to interrogatories, plaintiff's untimely, informal attempt to amend her answers to interrogatories months after the discovery end date, by first identifying Dr. Berman in her Rule 4:27(b) pretrial exchange with defendants, was properly disregarded by the trial court and adverse parties pursuant to Rule 4:17-7. The inclusion of Dr. Berman as an

expert in the pretrial exchange, months after the end of discovery, did not cure plaintiff's discovery violation.

Plaintiff argues she did not intend to deceive, surprise, or prejudice defendants. Even if the failure to name Dr. Berman as an expert was inadvertent, it still surprised defendants by not putting them on notice of plaintiff's intention to call him as an expert, thereby precluding them from deposing him as part of pretrial discovery.

The trial court correctly noted Dr. Berman was not a medical provider. He provided no medical treatment to plaintiff, nor could he ethically as an independent medical examiner. Consequently, the catch-all language used by defense counsel in his February 18, 2016 letter did not apply to Dr. Berman.

In addition, allowing plaintiff to call a PIP independent medical examiner as an expert witness without appropriate disclosure during discovery in a subsequent personal injury action has the potential to thwart the important legislative goal of ensuring prompt payment of PIP medical benefits. See Bardis, 199 N.J. at 278 (citing Caviglia v. Royal Tours of Am., 178 N.J. 460, 467 (2004)). Insurers that pay PIP medical benefits "in the ordinary course should do so safe in the knowledge that the evidence of that payment will not be admissible in the event there is a civil suit, in order to avoid creating an incentive

10

to decline payment." Id. at 280. While <u>Bardis</u> involved an attempt to call the PIP insurer's employee, rather than an independent medical examiner, the same rationale applies. As noted by the Court, "payment of PIP benefits for treatment of an injury is irrelevant to the question of causation of that injury." Id. at 269.

We discern no abuse of discretion by the trial court, much less a manifest abuse of discretion. The trial court properly barred Dr. Berman from testifying. By doing so, plaintiff was not precluded from presenting evidence of the nature and extent of her injuries and the proximate causation of those injuries through the testimony of her four experts and the other evidence adduced during the trial. Therefore, we detect no unfair prejudice to plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3382-16T4